**MEYER**

v.

**UNITED STATES (three cases).**

Nos. 49739–49741.

United States Court of Claims.
June 8, 1954.

Temple W. Seay, Washington, D. C., for plaintiffs. David L. Sheffrey, Joseph A. Hoskins and Harlow B. King, Kansas City, Mo., were on the briefs.

J. W. Hussey, Washington, D. C., with whom was Asst. Atty. Gen. H. Brian Holland, for defendant. Andrew D. Sharpe and Ellis N. Slack, Washington, D. C., were on the brief.

Before JONES, Chief Judge, and LIT. TLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

Plaintiffs sue for a refund of income and excess profits taxes. In these actions Leon R. Meyer, plaintiff in case No. 49739, claims recovery of individual income taxes paid for the year 1943 in the amount of $14,281.84, plus statutory interest; Lucile H. Meyer, plaintiff in case No. 49740, seeks recovery of individual income taxes paid for the year 1943 in the amount of $7,860.77, plus statutory interest; and Leon R. Meyer, as transferee of Meyer Jewelry Company, plaintiff in case No. 49741, claims recovery of corporation excess profits taxes exacted from the Meyer Jewelry Company for the fiscal year ending January

31, 1943, and the taxable period beginning February 1, 1943, and ending July 31, 1943, in the respective amounts of $449.34 and $3,395.63, plus statutory interest thereon. These cases were consolidated because all three turn on the single issue of whether the Meyer Jewelry Company underwent a "nontaxable reorganization" within the meaning of those terms in section 112 of the Revenue Act of 1928, 45 Stat. 791, 816–818, 26 U.S.C.A. Int.Rev.Acts, page 377.

The facts show that in 1931 the assets of the Meyer Jewelry Company (hereinafter referred to as the old corporation) were transferred through a receivership proceeding, wherein the creditors received 25 cents on the dollar, to the new Meyer Jewelry Company (hereinafter referred to as the new corporation) with the stock of the old corporation being cancelled and the stock of the new corporation being issued to the stockholders of the old corporation. The primary issue presented in cases No. 49739, and No. 49740 is whether or not the stockholders of the new corporation were entitled to carry over as a part of the basis of their stock the basis of the stock in the hands of the stockholders of the old corporation for purposes of determining gain or loss on the sale thereof.

The primary issue presented in case No. 49741 is whether or not the new corporation is entitled to use the book value of the "capital surplus" account of the old corporation in computing the equity invested capital of the new corporation. The salient facts with reference to this follow.

The Meyer Jewelry Company (old corporation) was incorporated in 1890 under the laws of the State of Missouri with authorized capital stock of $2,000, all of which was beneficially owned by Lewis Meyer, father of Leon R. Meyer. The old corporation encountered financial difficulties on several occasions and in 1921 a composition settlement was made with its creditors for 40 cents on a dollar. Mrs. Rika R. Meyer, mother of Leon R. Meyer, frequently loaned money to the old corporation. On March 4, 1925, Lewis Meyer sold and transferred all of the stock of the old corporation to Mrs. Rika R. Meyer for a consideration of $30,570.15. The capital stock of the old corporation was subsequently increased several times and on March 1, 1928, Mrs. Rika Meyer beneficially owned all the outstanding stock, which was 500 shares of common and 450 shares of preferred, for which she had paid $45,000 additional consideration. Sometime prior to 1931 she gave 50 shares of this stock to Leon Meyer.

Again, at the beginning of 1931, the old corporation was in financial difficulty and unable to pay its debts, and once more it undertook to make a composition settlement with its creditors, but, on March 19, 1931, while negotiations were being carried on, certain creditors with note claims in excess of $3,100 filed receivership proceedings against the corporation in the United States District Court for the Western District of Missouri. On the same day the old corporation joined in the request for the appointment of a receiver and Leo H. Ludwig was appointed receiver on that day. The assets of the old corporation were accordingly turned over to the receiver and he operated the business until it was subsequently sold. Although the merchandise inventory alone had a book value of $107,651.97, three independent appraisers appointed by the court, in their report submitted on July 3, 1931, appraised all of the assets of the old corporation at $50,211. This was a fair appraisal. This appraisal of $50,211, when compared with the existing liabilities of the old corporation of approximately $88,000, showed that the old corporation was insolvent in the bankruptcy sense.

Shortly after the receiver was appointed the stockholders of the old corporation, Mrs. Rika Meyer, who owned 900 shares, and Leon Meyer, who owned 50 shares, adopted a "plan of reorganization" which is set forth in finding 17. Pursuant to the stockholders' desire, Louis Oppenstein, acting as their agent,

undertook negotiations with the receiver to *purchase* the assets of the old corporation. The creditors were aware of the fact that the stockholders wanted to purchase the assets of the old corporation through Mr. Oppenstein. On July 6, 1931, the receiver submitted his report to the court showing Oppenstein's offer to purchase free and clear of all liens, claims or incumbrances of any kind, all the assets of the old corporation for an amount sufficient to pay 25 percent of all lawful claims of the old corporation's creditors; plus all taxes required to be paid by the receiver; plus all preferred claims, plus the court costs of the receivership; plus the receiver's fees, and plus all costs and legal expenses incurred by the Manufacturing Jewelers Board of Trade which had been acting as representative of various creditors of the old corporation. On July 9, 1931, the court authorized and directed the receiver to sell, at a private sale, the assets of the old corporation to Oppenstein pursuant to his offer, and on July 17, 1931, the receiver submitted his report showing the sale to Oppenstein of all the assets of the old corporation. The total cost of the assets of the old corporation to Oppenstein was $28,515. Mrs. Rika Meyer furnished the money for this transaction. The stockholders organized the new corporation under the laws of the State of Missouri on July 17, 1931, with the authorized capital stock of 300 shares of $100 par value common stock going to them in about the same ratio that they held in the old corporation, 285 to Rika and 15 to Leon. The stock of the old corporation was turned in and cancelled with no money being paid for the new stock. On July 20, 1931, at a combined meeting of the stockholders and directors, the same plan of reorganization, which is set forth in finding 17, was adopted by the new corporation. This plan is not contained in, or referred to by, the record of the District Court of the insolvency receivership proceedings. The new corporation took over the business and operated it continuously until July 31, 1943. The net result of the receivership proceedings was the elimination of an $88,000 liability for $22,000 plus incidental expenses. The new corporation assumed a note for $25,000, which represented the money furnished by Mrs. Rika Meyer for Oppenstein to purchase the assets of the old corporation. This note was subsequently paid. On July 20, 1931, the new corporation wrote down the assets to a fairer value for a going concern. As indicated in the balance sheet, which is set forth in finding 18, the going concern value of the assets purchased from the old corporation was $87,616.01, still less than the liabilities of the old corporation.

Leon Meyer made cash contributions to surplus in the amount of $11,500, $1,500 on March 31, 1937, and $10,000 on January 30, 1940. On December 29, 1941, Mrs. Rika Meyer made a gift to Leon Meyer of all of her shares, 284 120/945ths, and reported the same for federal gift tax purposes, thus making Leon Meyer the beneficial owner of all of the outstanding stock of the new corporation. On July 27, 1943, Leon Meyer made a gift of half of the shares (150) to his wife, Lucile Meyer, and reported the same for federal gift tax purposes. On the same day a plan of liquidation of the new corporation was adopted and the assets were transferred to Leon and Lucile Meyer equally on July 31, 1943, in exchange for their stock. The value of the assets thus distributed is stipulated to have been $94,887.61 and this is the sum to be used in ascertaining the profit derived from the liquidation. Leon Meyer was appointed as Liquidating Agent.

The Commissioner of Internal Revenue treated the transfer of the old corporation's assets to the new corporation, with the cancellation of the old stock and issuance of the new stock, as a taxable exchange and determined the basis of the stock held by Leon and Lucile Meyer to be $11,500, which represented the cash contributions made by Leon Meyer subsequent to the 1931 transfer.

The $11,500 basis was allocated by the Commissioner of Internal Revenue 13/15ths, or $9,966.67 to Lucile, and 2/15ths, or $1,533.33 to Leon Meyer. This allocation was made upon the grounds first, that the $11,500 became the cost of the 15 shares Leon then held, secondly, that the oldest 15 shares outstanding at the time of liquidation carried the basis of $11,500 and, thirdly, that the oldest shares outstanding were two qualifying shares owned beneficially by Leon and 150 shares owned by Lucile Meyer. If the basis used by the Commissioner of Internal Revenue and the allocation thereof are correct, the capital gain to Lucile Meyer was $37,-477.13 and to Leon Meyer was $45,910.-48. The Commissioner determined and collected the taxes computed on these bases. If the Meyer Jewelry Company experienced a "nontaxable reorganization" in 1931 within the meaning of those terms as used and intended in sections 112 and 113 of the Revenue Act of 1928, the aggregate gain to plaintiffs Leon and Lucile Meyer, upon the liquidation of the new corporation in 1943, would be $7,817.46. This would be the aggregate gain because Leon and Lucile Meyer would be entitled not only to their cost basis, but also to the cost basis of the stock in the hands of the stockholders of the old corporation. Thus computed, the basis of their stock would be $87,070.15, which is the aggregate of the $30,570.15 paid by Mrs. Rika Meyer for the original stock of the new

corporation, the $45,000 paid by Mrs. Rika Meyer when the capital stock was increased, and the $11,500 cash contributions made by Leon Meyer.

The Commissioner of Internal Revenue determined and collected excess profits taxes for the fiscal year ending January 31, 1943, and the taxable period beginning February 1, 1943, and ending July 31, 1943, in the respective amounts of $449.34 and $3,395.63, using an equity invested capital of $77,232.83 and $86,-867.31 respectively.

Plaintiff in case No. 49741, contends that the equity invested capital for the fiscal year ended January 31, 1943, and the taxable period beginning February 1, 1943, and ending July 31, 1943, should have been $130,100.55 and $136,812.05, respectively. The principle part of this differential is attributable to the desire of plaintiff to include the book value of the "capital surplus" account of the $62,-810.31 of the old corporation in the computation of the equity invested capital of the new corporation. Plaintiffs' claims for refunds were rejected on the ground that the Meyer Jewelry Company did not undergo a "nontaxable reorganization in 1931."

The plaintiffs contend that the Meyer Jewelry Company experienced a reorganization in 1931; that this reorganization was a "nontaxable reorganization" because it meets the requirements of section 112(b) (3) and (i) of the Revenue Act of 1928;[1] that they also meet

---

Revenue Act of 1928, 45 Stat. 791, 816–820.

"Sec. 112. Recognition of gain or loss. (a) General rule.—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

"(b) Exchanges solely in kind.—

\* \* \* \* \*

"'3) Stock for stock on reorganization.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities

in such corporation or in another corporation a party to the reorganization.

\* \* \* \* \*

"(5) Transfer to corporation controlled by transferor.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his

the requirements of section 112(b) (5) of that Act; that having satisfied the requirements of section 112 they are entitled, under section 113(a) (6) or (7) of that Act, to the carryover bases of the stockholders of the old corporation in determining the gain on the sale of their stock and to have the book value of the "capital surplus" account of the old corporation included in the computation of equity invested capital. The pertinent portion of these sections is set forth in footnote 1.

The defendant contends that the 1931 transfer of the assets and stock of the old corporation to the new corporation was a taxable exchange and therefore the Commissioner of Internal Revenue's determinations are correct.

The plaintiffs first claim that they fall within the literal language of section 112(b) (3) and (i) (1) (A) and

interest in the property prior to the exchange.

\*   \*   \*   \*   \*

"(i) Definition of reorganization.—As used in this section and sections 113 and 115—

"(1) The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, \* \* \*.

"(2) The term 'a party to a reorganization' includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation. (j) Definition of control.—As used in this section the term 'control' means the ownership of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation.

"Sec. 113. Basis for determining gain or loss. (a) Property acquired after February 28, 1913.—The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

\*   \*   \*   \*   \*

"(6) Tax-free exchanges generally.— If the property was acquired upon an exchange described in section 112(b) to (e), inclusive, the basis shall be the same as in the case of the property exchanged, decreased in the amount of any money received by the taxpayer and in-

creased in the amount of gain or decreased in the amount of loss to the taxpayer that was recognized upon such exchange under the law applicable to the year in which the exchange was made. \* \* \* This paragraph shall not apply to property acquired by a corporation by the issuance of its stock or securities as the consideration in whole or in part for the transfer of the property to it;

"(7) Transfers to corporation where control of property remains in same persons.—If the property was acquired after December 31, 1917, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 80 per centum or more remained in the same persons or any of them, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. This paragraph shall not apply if the property acquired consists of stock or securities in a corporation a party to the reorganization, unless acquired by the issuance of stock or securities of the transferee as the consideration in whole or in part for the transfer;

"(8) Same—corporation controlled by transferor.—If the property was acquired after December 31, 1920, by a corporation by the issuance of its stock or securities in connection with a transaction described in section 112(b) (5) (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money, in addition to such stock or securities), then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made; \* \* \*."

(B). The plaintiffs further claim that the transfer in 1931 was for a business purpose and was brought about by a business exigency and therefore this principle, established in Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, is satisfied. The plaintiffs also claim that there was a carefully defined written "plan of reorganization"; a retention of the firm name; the transfer of all the assets of the old corporation by a private sale to the new corporation; the issuance of all the stock of the new corporation to the stockholders of the old corporation in the same ratio as their stockholdings were in the old corporation; and the operation of the business without interruption with the same assets and family stockholders until 1943. With these points we agree and we also agree that a transfer of the assets to a new corporation through an agent does not prevent the application of this section if the transfer is a part of an integrated plan. Helvering v. Alabama Asphaltic Limestone Co., 315 U.S. 179, 184, 62 S.Ct. 540, 86 L.Ed. 775.

It is now settled that literal compliance with the language of this section is not always determinative of nonrecognition of gain or loss on the exchange. Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U.S. 462, 53 S.Ct. 257, 77 L.Ed. 428, and numerous cases following that decision.

The 1931 transfer on the surface, seems to have met all the requirements for a "nontaxable reorganization" under section 112 of the 1928 Revenue Act, except for one, the renowned and crucial "continuity of proprietary interest" requirement. This requirement, introduced in Cortland Speciality Co. v. Commissioner, 2 Cir., 60 F.2d 937, and given prominence in Pinellas Ice & Cold Storage Co. v. Commissioner, supra; Helvering v. Minnesota Tea Co., 296 U.S. 378, 56 S.Ct. 269, 80 L.Ed. 284; LeTulle v. Scofield, 308 U.S. 415, 60 S.Ct. 313, 84

L.Ed. 355; Helvering v. Alabama Asphaltic Limestone Co., supra; and Detroit Michigan Stove Company v. United States, Ct.Cl., 121 F.Supp. 892, is dispositive of this case. We believe that it is within the purview and spirit of this requirement that there be a real proprietary interest in the old corporation to continue in the new corporation. Here lies plaintiffs' insuperable barrier because the old corporation was insolvent, in the bankruptcy sense, in that the aggregate fair valuation of its assets was less than its liabilities.

Plaintiffs contend that the old corporation was not insolvent in the bankruptcy sense, but this position is clearly not supported by the evidence. On the contrary, the three independent appraisers, who were appointed by the court, found the assets to have a value of only $50,211, when the liabilities were $88,000. The creditors, who were desirous of obtaining all they could on the sale of these assets, were compelled to accept $22,000 in settlement of their claims. It is true that these figures probably did not represent the going concern value. Cf. New Jersey Mortgage & Title Co. v. Commissioner, 3 T.C. 1277, 1289. The value placed on these assets by the new corporation, which was closer to the going concern value, was still less than the liabilities of the old corporation. Under the facts of this case we are of the opinion that even the going concern value of the old corporation was not as much as $88,000. Therefore, since the old corporation was insolvent in the bankruptcy sense, the creditors, under the full priority rule of Northern Pacific Ry. Co. v. Boyd, 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931, could have and in fact did, as a matter of law, eliminate the interest of the stockholders in the old corporation. The insolvency of the old corporation in the bankruptcy sense, gave the creditors an effective command in fact and in law over the assets of that corporation. Helver-

ing v. Alabama Asphaltic Limestone Co., supra. The creditors exercised this command through the receivership proceedings by compelling the liquidation of the old corporation and the sale of its assets for the highest obtainable price under the circumstances. The economic and equity interest, as such, of the stockholders of the old corporation was thus eliminated and the stock of that corporation was absolutely worthless at the time of the alleged reorganization.

Section 112(b) (3) provides: "No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, *exchanged* solely for stock or securities in such corporation or in another corporation a party to the reorganization." (Emphasis supplied.)

It is our opinion that the term "exchange" in this context, connotes the transfer of stock in consideration of stock, and not a transfer of valuable stock for absolutely worthless stock, as was the case here. The stockholders of the old corporation had no equity interest to continue or to carry over to the new corporation in "exchange" for the stock of that corporation. The ownership of the stock of the new corporation was not dependent upon or by virtue of the ownership of ·the stock of the old corporation, but rather by virtue of the purchase of the assets at the receivership sale. The assets were purchased at a bargain, but the difference between the purchase price and the value of the assets was not attributable to ownership of stock in the old corporation nor did it represent an equity in the old corporation. The stockholders of the old corporation stood in the same position as any purchaser at the sale of the assets insofar as having any legal or equitable interest in the assets of the old corporation.

The nonrecognition provisions were enacted into the revenue laws to prevent the taxation of transfers that in the business sense did not really involve a gain or loss, but only a reshuffling of the same interest. In the cases before us there was a clearly defined business and economic loss, the stock of the old corporation was absolutely worthless and we see no reason why the loss should not have been recognized.

The court in Mascot Stove Co. v. Commissioner, 6 Cir., 120 F.2d 153, certiorari denied 315 U.S. 802, 62 S.Ct. 630, 86 L.Ed. 1202; and Templeton's Jewelers, Inc., v. United States, 6 Cir., 126 F.2d 251, reached the same result under similar circumstances for substantially the same reasons. The plaintiffs contend, however, that these cases are distinguishable because in those cases there was a clear break in title to the assets between the old corporation and the new corporation. However, assuming, there was no break in the legal title in the instant cases, we do not believe that that factor is of any legal significance because it is undisputed that the entire business was continued by the same owners. It is also true that it was the lack of this continuation of the business by the same owners that gave birth to the "continuity of proprietary interest" rule. However, as we have stated earlier, we are of the opinion that it is inherent in this rule of continuity of interest that there be an equity interest to continue. We therefore hold that the Meyer Jewelry Company did not experience a "nontaxable reorganization" in 1931.

The plaintiffs also take the position that the transfer of the properties of the old corporation to the new corporation qualifies for non-recognition of gain or loss under section 112(b) (5) of the Revenue Act of 1928. This section provides:

"No gain or loss shall be recognized if property is transferred to

a corporation by one or more persons solely in *exchange* for stock or securities in such corporation, * * *." (Emphasis supplied.)

In order for plaintiffs to come within this section they must show that their stock was the "property" that was transferred to the new corporation in "exchange" for the stock of that corporation. We do not believe that the 1931 transfer involved an "exchange" within the purview of this section. The term "exchange" in this context, clearly connotes the transfer of something of value for the stock, one being given in consideration of the other. Here, the stock of the old corporation was absolutely worthless at the time of the sale of the assets and at the time of the transfer of the stock and therefore could not be "exchanged" for the stock of the new corporation within the meaning of the statute.

Although not presented by counsel, there is some question as to whether this transaction would have been taxable under section 112(a) because section 112(b) (5) may, but not necessarily, only cover the exchange itself and not the antecedent steps in connection with a plan of reorganization. Cf. Helvering v. Cement Investors, Inc., 316 U.S. 527, 534, 62 S.Ct. 1125, 86 L.Ed. 1649. However, in view of our holding we need not express an opinion on this question at this time.

We therefore conclude that plaintiffs have failed to show that the 1931 transfer involved an exchange within the meaning of section 112(b) (3) or (5) and accordingly, the defendant's determinations are correct and the petitions are dismissed.

It is so ordered.

JONES, Chief Judge, and MADDEN and WHITAKER, Judges, concur.

LARAMORE, Judge, took no part in the consideration or decision of these cases.