NORMAN SCOTT, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

Docket No. 705-66. Filed July 28, 1967.

*John T. McKellar*, for the petitioner.
*Harold Friedman*, for the respondent.

OPINION

DAWSON, *Judge:* Respondent determined a deficiency in petitioner's income tax for the taxable year ended June 30, 1962, in the amount of $22,384.77.

Adjustments to depreciation expense, raised in the notice of deficiency, have been agreed to by the parties. Thus the only issue for decision is whether a transaction between Norman Scott, Inc., River Oaks Motors, Inc., and Houston Continental Motors Ltd., Inc., which took place between May 31, 1961, and August 3, 1961, qualifies as a statutory merger within the meaning of section 368(a) (1) (A), I.R.C. of 1954,[1] so that Norman Scott, Inc., is entitled to a deduction on its Federal income tax return for the taxable year ended June 30, 1962, for net operating loss carryovers in the amount of $23,815.65 and $18,900.98 arising from the prior operations of River Oaks Motors, Inc., and Houston Continental Motors Ltd., Inc., respectively.

This is a fully stipulated case. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference and adopted as our findings of fact.

Norman Scott, Inc. (hereinafter called petitioner), is a corporation whose principal place of business was Houston, Tex., at the time the petition in this proceeding was filed. It was duly organized under the laws of the State of Texas in February 1957 and filed its U.S. corporation income tax return for the taxable year ended June 30, 1962, with the district director of internal revenue at Austin, Tex.

Houston Continental Motors Ltd., Inc. (hereinafter called Continental), was duly incorporated under the laws of the State of Texas on February 14, 1957. It filed its U.S. corporation tax returns on a taxable year ending June 30.

River Oaks Motors, Inc. (hereinafter called River Oaks), was incorporated under the laws of the State of Texas on January 20, 1959. It

---

[1] All section references are to the Internal Revenue Code of 1954 unless otherwise indicated.

filed its U.S. corporation income tax returns on a taxable year ending on November 30.

At all times relevant to this case, Norman J. Scott and his wife, Janie Scott, owned approximately 99 percent of the common stock of petitioner, Continental, and River Oaks. From the date of their formation, all three corporations engaged in the sale and servicing of foreign make automobiles in the Houston area. Petitioner was an authorized franchise dealer for the Volkswagen and Porsche automobiles. River Oaks had a franchise for the sale of Fiat automobiles. Continental was a franchise dealer for MG, Morris Minor, and Alfa Romeo automobiles.

On or about July 15, 1960, River Oaks sold all of its shop equipment and vacated its business address in the River Oaks area of Houston. After that date it did not purchase any new automobiles.

From November 1958 through April 1961, Continental operated at two locations in the Houston area, one in downtown Houston and the other on South Main. On April 5, 1961, Continental sold its business at the South Main location consisting of its lease, shop equipment, and most of its inventory which consisted primarily of English automobiles. The business at the South Main location was sold at a loss of $5,051.33, this loss being reflected as "Loss on Liquidation to Overseas Motors" on Continental's corporate income tax return for the taxable year ended June 30, 1961. The unsold automobiles were moved to Continental's downtown location.

Continental made no purchase of new cars after April 5, 1961. On April 15, 1961, its lease for the downtown Houston location expired and its inventory at that time, along with the remaining River Oaks inventory on the Continental lot, was moved to an open lot in downtown Houston. This lot was around the corner from petitioner's plant and service department and was under lease to petitioner. The petitioner continued to service automobiles previously sold by and acquired from River Oaks and Continental.

On May 26, 1961, petitioner, Continental, and River Oaks entered into an "Agreement and Plan of Merger." Under this agreement, the board of directors of each corporation deemed it advisable that Continental and River Oaks merge into petitioner and resolved that this proposal be submitted to the vote of the shareholders. The agreement further provided that a single corporation, i.e., the petitioner, was to survive and that the merger was to become effective, if at all, upon the completion of issuance of a certificate of merger by the secretary of state of the State of Texas. The agreement provided that petitioner would issue 250 shares of stock to the shareholders of Continental in exchange for the 250 shares which Continental had issued, and 500 shares to the shareholders of River Oaks in exchange for the 50,000 shares which River Oaks had outstanding. It also provided that

petitioner would succeed to all the assets, rights and franchises of Continental and River Oaks as well as all debts and liabilities due by them.

An "Articles of Merger" was executed on July 31, 1961, and filed with the secretary of state of the State of Texas. This document was for the stated purpose of merging Continental, River Oaks, and petitioner. The secretary of state for the State of Texas issued a "Certificate of Merger" on August 3, 1961.

River Oaks filed a return, which it called final return, for the 7-month period from December 1, 1960, through June 30, 1961. This return reflected the net operating loss for the short taxable period in the amount of $5,102.21 computed in the following manner:

Income:

| | | |
|---|---:|---:|
| Sales—new cars | $23, 044. 62 | |
| Sales—used cars | 3, 720. 00 | |
| Sales—parts | 32. 34 | |
| | 26, 796. 96 | |
| Cost of sales | 28, 792. 44 | |
| Gross loss on sales | | $(1, 995. 48) |

Expense:

| | | |
|---|---:|---:|
| Commissions | 95. 13 | |
| Demonstration | 22. 60 | |
| Office | 17. 84 | |
| Advertising | 14. 00 | |
| Freight | 3. 53 | |
| Postage | 2. 12 | |
| Miscellaneous | 279. 57 | |
| Ad valorem taxes | 302. 58 | |
| Franchise taxes | 30. 55 | |
| Other taxes | 116. 63 | |
| Interest | 2, 184. 63 | |
| Organization expense | 37. 55 | 3, 106. 73 |
| Net loss | | (5, 102. 21) |

Including the above figure, River Oaks sustained a net operating loss of $23,815.65 up to the time of its merger with petitioner. As of that date, River Oaks was indebted to petitioner in the amount of $2,940.68. It was also indebted to Continental in the amount of $4,957.42. In addition to these indebtednesses, River Oaks had the following assets and liabilities at book value on or about July 1, 1961:

ASSETS

| | |
|---|---:|
| Used cars | $1, 871. 08 |
| New cars | [1] 7, 489. 64 |
| Inventory—parts | 1, 273. 39 |
| | 10, 634. 11 |

[1] This figure takes into account the adjusted entries on petitioner's balance sheet as of July 1, 1961.

#### LIABILITIES

| | |
|---|---|
| Accounts payable | $2,124.06 |
| Notes payable: | |
| Commercial Credit Corp. | |
| New | 6,848.78 |
| Used | 820.00 |
| Houston Bank & Trust | 8,500.00 |
| River Oaks State Bank | 2,797.55 |
| Commercial credit—other | 1,605.60 |
| | 20,571.93 |

As of July 1, 1961, Continental was indebted to petitioner in the amount of $17,101.96. In addition, Continental had the following net assets at book value and other liabilities:

#### ASSETS

| | |
|---|---|
| Cash | |
| Houston Bank & Trust | $3,058.25 |
| National Bank of Commerce | 79.27 |
| Contract in transit | 100.00 |
| Account rec.—customers | 263.40 |
| N/R—River Oaks Motors | 4,957.42 |
| Deferred certificates | 150.00 |
| Used cars—others | 5,181.18 |
| New cars—others | 116,524.59 |
| Machine and equipment | 175.65 |
| Furniture and fixtures | 69.96 |
| Truck | 608.88 |
| Fin. part—Commercial credit | 7,765.47 |
| Associate | 1,033.00 |
| Texas cities | 165.00 |
| C.I.T. | 308.81 |
| | 140,440.88 |

#### LIABILITIES

| | |
|---|---|
| A/P | 1,909.66 |
| Commercial Credit Corp. | |
| New | 107,420.70 |
| Used | 8,146.87 |
| Houston Bank & Trust | 11,482.50 |
| National Bank of Commerce | 3,496.00 |
| Houston Chronicle | 3,035.25 |
| Commercial credit | 460.74 |
| Acct. Pay.—Commercial credit | 845.58 |
| Customers deposit | 200.00 |
| Payroll tax | 110.44 |
| | 137,107.74 |

Continental's operations for its taxable period from July 1, 1960, through June 30, 1961, resulted in a tax loss of $60,306.87. As of the date of its merger with petitioner, Continental had a net operating loss of $18,900.98 which had not been carried back and absorbed for prior taxable years.

The inventory of new automobiles and new parts of all the corporations was carried on the corporate books at cost. The inventory of used or trade-in automobiles was carried at cost or market, whichever was lower. On July 1, 1961, the inventories of River Oaks and Continental were each worth less than their cost.

On a consolidated balance sheet for petitioner, River Oaks, and Continental, which was prepared by petitioner's certified public accountant, the following adjusting entries appear:

| | | |
|---|---:|---:|
| N/P—Norman Scott | $20, 042. 64 | |
| N/P—Houston Continental | 4, 957. 42 | |
| N/R—Continental Motor | | $15, 279. 00 |
| N/R—River Oaks | | 7, 560. 97 |
| A/R—Customers | | 1, 822. 96 |
| A/R—Customers | | 337. 13 |

The losses incurred by River Oaks and Continental prior to the merger with petitioner were claimed as net operating loss carryovers by petitioner on its income tax return for the taxable year ended June 30, 1962.

At no time did petitioner, Continental, or River Oaks own any shares of stock in each other. Most of River Oaks' and Continental's notes payable to the Houston Bank & Trust Co. and River Oaks State Bank were endorsed by Norman Scott, individually, as an accommodation endorser.

In presenting their opposing views as to the tax ramifications of the merger, the parties agree that section 269, pertaining to acquisitions made to evade or avoid income taxes, is inapplicable. Similarly, they agree that the amounts in question qualify as operating loss carryovers under sections 381 and 382 if there was a section 368 reorganization such as is required by section 381(a) (2).[2] Consequently, the sole issue for our determination is whether the merger of River Oaks and Continental with petitioner qualifies as a "statutory merger" under the provisions of section 368(a) (1) (A).[3]

---

[2] SEC. 381. CARRYOVERS IN CERTAIN CORPORATE ACQUISITIONS.

(a) GENERAL RULE.—In the case of the acquisition of assets of a corporation by another corporation—

\* \* \* \* \* \* \*

(2) in a transfer to which section 361 (relating to nonrecognition of gain or loss to corporations) applies, but only if the transfer is in connection with a reorganization described in subparagraph (A), (C), (D) (but only if the requirements of subparagraphs (A) and (B) of section 354(b) (1) are met), or (F) of section 368(a) (1),
the acquiring corporation shall succeed to and take into account, as of the close of the day of distribution or transfer, the items described in subsection (c) of the distributor or transferor corporation, subject to the conditions and limitations specified in subsections (b) and (c).

[3] SEC. 368. DEFINITIONS RELATING TO CORPORATE REORGANIZATIONS.

(a) REORGANIZATION.—

(1) IN GENERAL.—For purposes of parts I and II and this part, the term "reorganization" means—

(A) a statutory merger or consolidation;

Petitioner contends that there was a section 368(a)(1)(A) statutory merger between itself, Continental, and River Oaks since the three corporations were merged pursuant to an agreement which was duly approved by the secretary of state of the State of Texas. Respondent, on the other hand, contends that the transferor corporations were insolvent as of the date of transfer, that any stock which their stockholders exchanged was therefore worthless, and thus the stockholders of Continental and River Oaks could not have received a proprietary interest in petitioner. Alternatively, he argues that since petitioner was the substantial creditor of each transferor corporation, the merger was, in reality, the satisfaction of an indebtedness. Respondent therefore concludes that there was no reorganization within the intendment of section 368(a)(1)(A) and the applicable regulations.

It is well established that proof that a transaction is a statutory merger under State law is not in itself dispositive of whether there is a qualifying reorganization under section 368(a)(1)(A). See *Roebling* v. *Commissioner*, 143 F. 2d 810 (C.A. 3, 1944), certiorari denied 323 U.S. 773 (1944). The regulations provide that requisite to a reorganization are a continuity of the business enterprise [4] and of the proprietary interest held by the shareholders of the transferor corporation.[5] See *Roebling* v. *Commissioner, supra; Meyer* v. *United States*, 121 F. Supp. 898 (Ct. Cl. 1954), certiorari denied 348 U.S. 929 (1955); and *W. H. Truschel*, 29 T.C. 433 (1957). Likewise, there must be a business or corporate purpose for the reorganization.[6] See *Gregory* v. *Helvering*, 293 U.S. 465 (1935).

As of July 1, 1961, River Oaks had assets with a book value of $10,634.11 and a fair market value which was somewhat less. It had total liabilities of $28,470.03 which included an indebtedness of $2,940.68 to petitioner and an indebtedness of $4,957.42 to Continental. Hence River Oaks was insolvent as of the date of the merger.

As of July 1, 1961, Continental had assets with a book value of $140,440.88. However, its inventories were worth somewhat less than

---

[4] Respondent does not contend that there is no continuity of business enterprise.

[5] Sec. 1.368–1 [Income Tax Regs.] Purpose and scope of exception of reorganization exchanges.

(b) *Purpose.* * * * Requisite to a reorganization under the Code are a continuity of the business enterprise under the modified corporate form, and (except as provided in section 368(a)(1)(D)) a continuity of interest therein on the part of those persons who, directly or indirectly, were the owners of the enterprise prior to the reorganization.

[6] Sec. 1.368–1 [Income Tax Regs.] Purpose and scope of exception of reorganization exchanges.

(c) *Scope.* * * * A scheme, which involves an abrupt departure from the normal reorganization procedure in connection with a transaction on which the imposition of tax is imminent, such as a mere device that puts on the form of a corporate reorganization as a disguise for concealing its real character, and the object and accomplishment of which is the consummation of a preconceived plan having no business or corporate purpose, is not a plan of reorganization.

their book value and its note receivable from River Oaks was worth less than its face amount of $4,957.42. Since Continental's liabilities totaled $154,209.70, of which $17,101.96 was owed to petitioner, this corporation was probably insolvent as of the date of the merger.

Utilizing the fact that River Oaks and Continental were both insolvent at the time of the merger and that the equity interests of their stockholders were therefore worthless, respondent reaches the conclusion that the holders of the proprietary interest in those corporations could not have held the requisite proprietary interest in petitioner after the merger. We do not agree. The stockholders of River Oaks and Continental received petitioner's stock under the terms of the merger. That the recipients were the same as petitioner's stockholders does not in itself preclude the interest transferred from being a proprietary interest; otherwise brother-sister corporations could never meet the requisite proprietary interest test of a section 368 reorganization. Likewise, since the stockholders of River Oaks and Continental received stock under the merger, the transaction cannot be likened to a sale. This distinguishes it from the situation in *Roebling* v. *Commissioner*, *supra*, where the stockholders of the transferor corporation received bonds under the terms of the statutory merger. Cf. *W. H. Truschel*, *supra*.

The receipt by Norman and Janie Scott of petitioner's stock may have been as stockholders of River Oaks and Continental or as creditors of two insolvent corporations. The latter could be so either because they possessed a 99-percent interest in the petitioner corporation which was River Oaks' and Continental's largest single creditor outside of the Commercial Credit Corp., or because, as an accommodation endorser on several of the insolvent corporations' notes payable, Norman Scott would soon inevitably become a creditor for amounts paid to satisfy such notes. A creditor of an insolvent corporation qualifies as having a proprietary interest in such corporation. See *Helvering* v. *Alabama Asphaltic Limestone Co.*, 315 U.S. 179 (1942) ; *Seiberling Rubber Co.* v. *Commissioner*, 169 F. 2d 595 (C.A. 6, 1948) ; *Meyer* v. *United States*, *supra;* and *Alexander E. Duncan*, 9 T.C. 468 (1947). Thus Norman and Janie Scott had a proprietary interest in River Oaks and Continental prior to the merger, either as stockholders or as creditors. It is not necessary for us to determine the exact nature of their interest for surely it was one or the other. In return for their interest, which had value as stockholders if the corporations were not insolvent in a bankruptcy sense and as creditors even if the corporations were insolvent, they were issued stock of petitioner. As such, the holders of the proprietary interest in both River Oaks and Continental maintained the requisite proprietary interest in petitioner as the surviving corporation of the merger.

Respondent, citing Rev. Rul. 59–296, 1959–2 C.B. 87,[7] then contends that to the extent River Oaks and Continental had any net value in excess of their liabilities, the transaction was actually a transfer in satisfaction of their indebtednesses to petitioner. This, he feels, is conclusive that there could have been no tax-free reorganization and he argues that petitioner is entitled only to bad debt deductions. We again disagree with his reasoning.

In Rev. Rul. 59–296 the respondent placed reliance on *H. G. Hill Stores, Inc.*, 44 B.T.A. 1182 (1941). In that case we found that amounts received by the parent corporation which was also the principal creditor of its insolvent subsidiary were received as a creditor rather than a stockholder. Accordingly, we upheld the parent corporation's contention that it was correct in taking a bad debt deduction for debts owed by its subsidiary in excess of the value of the assets transferred to it. We think the *Hill Stores* case is distinguishable, as is the revenue ruling which relies on it. The issue in the *Hill Stores* case was whether the transaction before the Court was the satisfaction of an indebtedness or the liquidation of an insolvent subsidiary which was in fact a distribution in cancellation of the parent corporation's stock. This Court properly rejected the latter theory because in order to have a liquidation under section 112(b) (6) of the Revenue Act of 1936 [8] the transfer must have been in cancellation or redemption of the parent's stock in the subsidiary. Since we found that the disputed transfer was motivated by the parent's position as a creditor rather than as a stockholder, the statutory language prohibited treatment of the transaction as a liquidation. Rather than a liquidation, the petitioner in this case is claiming the right to enter into a statutory merger under section 368(a) (1) (A). Nowhere in the statute or the applicable regulations is there a requirement that the stock or assets received by a transferee corporation in a merger be received in the role of a stockholder rather than a creditor. Thus the statutory language which compelled us in the *Hill Stores* case to find that there could not have been a liquidation is not present in the statutory provisions dealing with mergers.

Having distinguished the *Hill Stores* case, we also disagree with respondent's position that where a statutory merger evolves out of a debtor-creditor relationship, it must necessarily be treated as the satisfaction of an indebtedness for tax purposes. Respondent may be

---

[7] In Rev. Rul. 59–296 the Commissioner said that where a fully solvent parent corporation owns all the stock of a subsidiary and is also the subsidiary's bona fide creditor in an amount greater than the fair market value of all the subsidiary's net assets, the transfer of those assets to the creditor parent in a transfer which is a merger under applicable State law must be treated as a transfer made in satisfaction of indebtedness. The Commissioner reasoned that since all of the property transferred was less than the debt, no part of the transfer was attributable to the stock interest of the parent.

[8] Now sec. 332 (a) and (b), I.R.C. 1954.

correct in his assertion that petitioner could have elected to write off the worthless indebtednesses from River Oaks and Continental, thereby making a partial recovery of its losses through a bad debt deduction. However, we believe the petitioner also had the option of merging with its debtors since there is no specific language either in section 368(a)(1)(A) or the regulations which provides that there must be a cancellation or redemption of stock to qualify for a statutory merger. Previously unrelated corporations can certainly enter into a statutory merger. And brother-sister corporations can also enter into a statutory merger when there is no indebtedness between them. See *Commonwealth Container Corp.*, 48 T.C. 483 (1967). That there is a debtor-creditor relationship between the two corporations makes no more difference here than it does in a (B) reorganization. See *Seiberling Rubber Co. v. Commissioner, supra.* The petitioner, as the creditor of River Oaks and Continental, had a choice between the business advantages and consequences, including those of Federal taxation, of merging with its sister corporations or of writing off their bad debts to it. Therefore, it is our view that the statutory merger of petitioner and its insolvent sister corporations is within the ambit of section 368(a)(1)(A).

Here the three corporations controlled by the same stockholders have made a valid statutory merger under State law. All of the factors required of such a reorganization under section 368 and the regulations promulgated thereunder have either been met, as discussed above, or conceded by respondent. Accordingly, we hold that the petitioner properly claimed deductions which related to loss carryovers from the prior operations of two related corporations with whom it entered into a statutory merger under Texas law.

*Decision will be entered under Rule 50.*