REUBEN L. ANDERSON v. COMMISSIONER OF TAXATION.

93 N. W. (2d) 523.

November 21, 1958—No. 37,471.

*Lewis L. Anderson,* for relator.

*Miles Lord,* Attorney General, and *Ralph W. Peterson,* Special Assistant Attorney General, for respondent.

MATSON, JUSTICE.

Certiorari to review an order of the Board of Tax Appeals assessing

against relator (herein designated as the taxpayer) an additional tax of $3,069.92, together with interest of $825.50, for the year of 1948.

The primary question—involving the interpretation and application of M. S. A. 1945, §§ 290.01 and 290.13—is whether, upon the distribution of the assets of a corporation dissolved in 1948, the share received by the taxpayer in excess of the cost of his corporate stock is taxable as a long-term capital gain or as income derived from a distribution of ordinary dividends. The answer to this question turns largely upon the basic question of whether the 1948 liquidation of the corporation, Asbestos Products Corporation, was a final and closed transaction for the discontinuance of its business or merely a procedural step in an over-all plan of reorganization for the continuation of that business and its proprietary control through and by a subsequently formed corporation known as Asbestos Products, Incorporated. Taxpayer also raises the question whether the State Income Tax Act, as construed by the Board of Tax Appeals, violates Minn. Const. art. 9, § 1.

This case arises from the following stipulated facts.

Asbestos Products Corporation (hereinafter called the old corporation) was incorporated in 1929 as an insulation contractor and dealer. It conducted this business until it was dissolved in 1948 by the voluntary action of its shareholders. A trustee was appointed to supervise the dissolution which was accomplished out of court on July 30, 1948. Prior to dissolution the corporation had four shareholders, the taxpayer alone owning 79.7 percent of the outstanding shares of stock. Upon dissolution, a distribution was made to the various shareholders of $50,577.06 in cash and two pieces of real property appraised immediately before dissolution at $98,500. Of the total distribution, taxpayer received $20,335.70 cash and all the real property, or a total value of $118,835.70.

Five days following the dissolution of Asbestos Products Corporation, a new corporation, Asbestos Products, Incorporated, was formed with an authorized capital of 500 shares. The stockholders of the new corporation paid $50,000 cash for the total 500 shares of stock. The shareholders of the new corporation were the same as the shareholders of the old corporation, with the exception that one who was a shareholder in the old corporation did not own stock in the new, and two

who were shareholders in the new corporation did not own stock in the old. The new corporation had five shareholders, one more than the old corporation. It has been stipulated that one of the purposes of the dissolution was to enable an employee of the old corporation, who became president of the new corporation, to own stock in the new corporation. The value of the stock of the old corporation was so high as to make a purchase difficult. The book value of each of the 350 shares in the old corporation at the time of dissolution was $333.47. Shares in the new corporation were sold at $100 per share and the president purchased five shares.

Three of the shareholders, who together owned more than 90 percent of the shares of the old corporation, also owned in excess of 90 percent of the shares issued by the new corporation and each maintained the proportionate stock equity they held in the old corporation. Taxpayer owned 79 percent of the outstanding shares issued by the new corporation (395 out of 500 outstanding) for which he paid $39,500.

Following the dissolution of the old corporation, the new corporation purchased from the trustee all the assets of the old corporation except a small bank account and the two pieces of real property distributed to taxpayer. This real estate consisted of two buildings plus land—one on Cleveland Avenue, St. Paul, held for investment purposes by the old corporation and one on Raymond Avenue, St. Paul, used as the situs of the old corporation and currently rented by the new corporation for the purpose of conducting the business. The new corporation assumed the accounts payable of the old corporation.

The new corporation conducted the same type of business as the old and no interruption in day-to-day transactions occurred as a result of the dissolution. No changes occurred in plant and office personnel with the exception that a different man held the office of president. No change occurred in the location of the business although the new corporation was no longer an owner of the building but a tenant. In every year following the dissolution in 1948 the new corporation declared in its income tax return that it was the "outgrowth, result, combination, or reorganization of a business in existence during this or any prior year since January 1, 1933."

In the distribution by the old corporation, $76,521.58 represented

532

accumulated earnings and profits. Taxpayer's pro rata share of these profits was $60,998.63 which he declared as a capital gain on his 1948 income tax return, thus subjecting only 50 percent of that figure to ordinary income rates.

A notice was sent to taxpayer on December 9, 1955, that the commissioner of taxation had determined that the $60,998.63 should be treated as a dividend currently payable in the year 1948 and taxed at ordinary income rates pursuant to § 290.13, subd. 2(a and b), rather than at capital gain rates. The order declared that taxpayer was liable for an additional $3,069.92 tax plus accumulated interest of $825.50, a total of $3,895.42. The taxpayer appealed to the Board of Tax Appeals, alleging, as he does here, that § 290.01, subd. 21(4), controls and precludes treating the distributed profits as an ordinary dividend.

The board amended the commissioner's order to exclude from tax treatment the $39,500 reinvested by taxpayer in the new corporation but affirmed the commissioner's order in all other respects. Upon certiorari, the board's order is before this court for review.

■ In challenging the conclusions of the board, taxpayer contends that the share received by him from the assets of the old corporation, in excess of the cost of his stock, is to be treated for taxation purposes as a long-term capital gain and not as income derived from a distribution of ordinary dividends. He bases this contention upon § 290.01, subd. 21(4),[1] which reads:

"Amounts distributed in liquidation of a corporation shall be treated as payment in exchange for the stock, and the gain or loss to the distributee resulting from such exchange shall be determined under section 290.12, *but shall be recognized only to the extent provided in section 290.13,* and shall be taken into account in computing net income only to the extent provided in section 290.16, subdivision 2. No amounts received in liquidation shall be taxed as a gain until the distributee shall have received in liquidation an amount in excess of the applicable loss or gain basis of the stock in respect of which the distribution is received, and any such excess shall be taxed as gain in the year in which received.

[1]For corresponding section of 1939 Federal Internal Revenue Code, see 53 Stat. 46, § 115(c).

*No amount received in liquidation shall be treated as the distribution of an ordinary dividend."* (Italics supplied.)

Taxpayer in effect asserts that the last sentence of the above-quoted section compels a determination that whenever a liquidation is found, even though such liquidation be but a step in a plan of corporate reorganization, no amounts distributed to a stockholder as his share of the liquidated corporation can be taxed as ordinary dividends. We do not so interpret the statute. If the legislature by adding the last sentence had so intended, no doubt it would have deleted from the first sentence of the above-quoted section the qualifying clause, "but shall be recognized only to the extent provided in section 290.13." In ascertaining legislative intent a statute is to be construed as a whole so as to harmonize and give effect to all its parts, and where possible, no word, phrase, or sentence will be held superfluous, void, or insignificant.[2] Furthermore, various provisions of a statute relating to the same subject must be interpreted in the light of each other.[3]

In thus construing the statute as a whole, we cannot ignore the first sentence thereof which specifically provides that gains or losses resulting to a stockholder upon the distribution to him of his share of the assets of a liquidated corporation *"shall be recognized only to the extent provided in section 290.13."* (Italics supplied.) It follows then that not all corporate liquidations result in distributions which are wholly immune under § 290.01, subd. 21(4), from classification as distributions of ordinary dividends.[4]

---

[2]Iowa Elec. Light & Power Co. v. City of Fairmont, 243 Minn. 176, 67 N. W. (2d) 41; Stevens v. City of Minneapolis, 29 Minn. 219, 12 N. W. 533; 17 Dunnell, Dig. (3 ed.) § 8951.

[3]See, Volk v. Paramount Pictures (D. Minn.) 91 F. Supp. 902.

[4]In applying § 290.01, subd. 21(4), to the particular case, its operative meaning can be ascertained only in conjunction with an examination of § 290.13, as given administrative recognition in 1947 when the commissioner of taxation promulgated the following regulations:

"* * * The loss or gain should be computed in the same manner as if the stock had been sold in the year in which the loss or gain is recognized, *but this rule does not apply to any non-closed transactions described in Section 290.13,* as liquidations incidental to non-closed transactions assume

534

In ascertaining whether the taxpayer's share in the distribution of the assets of the old corporation is in whole or in part to be treated as a long-term capital gain, or as income derived from a distribution of ordinary dividends, it here becomes appropriate to determine first whether the liquidation was but a step in a reorganizing transaction within the meaning of the applicable provisions of § 290.13. If it is found that the liquidation was in fact only a procedural device utilized as a part of a plan of reorganization within the meaning of § 290.13, then it necessarily follows that § 290.01 does not control the treatment of the distribution in this case, the latter section being applicable only when the former is not. In resolving the question of whether a statutory reorganization has been effected, it is of course wholly immaterial whether the advantage thereof is to the state or the taxpayer.[5]

In considering § 290.13,[6] it is first to be noted that subd. 1(3)

---

the characteristics of such transactions for the purpose of the tax." (Italics supplied.) Minn. Income Tax Act and Regulations, 1947, Art. 1-35.

[5]In the majority of cases the taxpayer alleges a "reorganization" rather than a "liquidation" since then he is not taxed on an exchange of security for security. Only when the "boot" enters the picture, as in this case, is the taxpayer taxed.

[6]Section 290.13, subds. 1(3), 2, 6(1)(c), and 7, read as follows:

§ 290.13, subd. 1. "No gain or loss from the following transactions shall be recognized at the time of their occurrence, except as otherwise specified in this section:

\*  \*  \*  \*  \*

"(3) If stock or securities *in a corporation a party to a reorganization* are, *in pursuance of the plan of reorganization,* exchanged *solely* for stock or securities in such corporation *or* in another corporation a party to the reorganization;" (Italics supplied.)

§ 290.13, subd. 2. "(a) If an exchange would be within the provisions of subdivision 1, clause (1), (2), *(3),* or (5) of this section, if it were not for the fact that the property received in exchange consists not only of property permitted by any such clause to be received without the recognition of gain, *but also of other property or money,* then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property;

"(b) If a distribution made *in pursuance of a plan of reorganization* is within the provisions of clause (a) of this subdivision *but has the effect of the distribution of a taxable dividend,* then there shall be taxed *as a dividend*

thereof provides that no gain or loss shall be recognized if stock or securities of one corporation are exchanged solely for stock or securities of another corporation, providing the exchange is made pursuant to a plan of reorganization and providing further that both corporations are parties to the reorganization. Subd. 2(a) adds that, *if property or money, termed "boot" in tax parlance, is also received in the exchange rather than only stock or securities for stock or securities, then the gain shall be recognized to the extent of the money received or the fair market value of the property.* Subd. 2(b) provides, however, that if the distribution has the "effect of the distribution of a taxable dividend" then it shall be taxed as a dividend, when the distribution is made pursuant to a plan of reorganization.

The purpose of subd. 2(b) is overlooked by the taxpayer when he asserts without qualification that the purpose of enacting § 290.13 "was to set up statutory proceedings whereby business corporations might reorganize without suffering the penalty of paying income taxes under other provisions of the income tax law." Taxpayer's analysis of statutory purpose is generally true but it doesn't go far enough since it misses the underlying purpose of subd. 2(b). Subd. 2(b) was incorporated in § 290.13 for the purpose of preventing the distribution, under the guise

---

to each distributee such an amount of the gain recognized under clause (a) *as is not in excess of his ratable share of the undistributed earnings and profits of the corporation* accumulated after December 31, 1932. The remainder, if any, of the gain recognized under clause (a) shall be taxed as a gain from the exchange of property." (Italics supplied.)

§ 290.13, subd. 6. "As used in this section and in section 290.14—

"(1) *The term 'reorganization' means:*

\* \* \* \* \*

"(c) A transfer by a corporation of all or a part of its assets to another corporation *if immediately after the transfer the transferor or its stock-holders, or both, are in* control of the corporation to which the assets are transferred;" (Italics supplied.)

§ 290.13, subd. 7. "As used in this section, the term *'control' means the ownership of stock possessing at least 80 per cent of the total combined voting power of all classes of stock entitled to vote* and at least 80 per cent of the total number of shares of all other classes of stock of the corporation." (Italics supplied.)

of a liquidation or a reorganization, of what are in effect dividends and giving to the distribution the favorable tax status of a capital gain transaction.[7] If a liquidation is not of itself a closed transaction which accomplishes a discontinuance of business but is, in effect, merely an intermediate procedural step in an overall plan which permits the controlling stockholders of the liquidated corporation to carry on and continue the business through a new corporate shell—which they also control—then a factual basis exists for finding a reorganization and, if the distribution of the assets of the old corporation includes not only an equivalence of stock in the new corporation but also money or property received to "boot" in exchange for the old stock, such distributed "boot" money or property becomes under § 290.13, subd. 2(b), taxable as a distribution of ordinary dividends from a continuing business.

■ At the outset it is well to bear in mind that, pursuant to M. S. A. 271.10,[8] it is primarily a question of fact for the Board of Tax Appeals to determine whether a distribution in a particular case is in effect a distribution of taxable dividends.[9] In Stronge & Lightner Co. v. Commr. of Taxation, 228 Minn. 182, 36 N. W. (2d) 800, we said that all questions of law and fact are to be viewed by us in the light of tne rule that a decision of the Board of Tax Appeals will not be disturbed if it has any reasonable basis in the law. In Oliver Iron Min. Co. v. Commr. of Taxation, 247 Minn. 6, 76 N. W. (2d) 107, we emphasized that our function as a court of review upon fact questions is to determine whether there is reasonable evidence to sustain the findings.

No arbitrary rule of thumb exists for determining whether a liquidation is a part of an overall plan of reorganization which results in a

[7]See Idaho Power Co. v. United States (Ct. Cl.) 161 F. Supp. 807, 809, where the Federal court similarly construed 1939 Internal Revenue Code, 53 Stat. 39, § 112(c)(2), which is the Federal equivalent of § 290.13, subd. 2(b).

[8]M. S. A. 271.10, subd. 1, provides:

"* * * Such review may be had on the ground that the board was without jurisdiction, that the order of the board was not justified by the evidence or was not in conformity with law, or that the board committed any other error of law."

[9]Bazley v. Commr. of Int. Rev. (3 Cir.) 155 F. (2d) 237.

distribution of ordinary dividends. A literal compliance with statutory provisions is not conclusive since we are concerned with substance and not form,[10] and this is particularly true in reorganization cases.[11] A series of apparently independent acts or events, separated from each other by a variety of legal devices, may by design or ultimate effect produce an overall plan of reorganization. There are, however, certain minimum statutory requisites that must exist.

As applied to the present facts, immediately after the transfer from the liquidated corporation of all or part of its assets to the new corporation, the transferor or its stockholders would as a requisite have to be in *control* of the transferee (§ 290.13, subd. 6[1][c]) to the extent of owning at least 80 percent of all voting and other stock in the new corporation. § 290.13, subd. 7. The control requisite is clearly fulfilled here since the stipulated facts show ownership by the same shareholders of 90 percent of the stock in both the old and the new corporations.

Assuming for the nonce that both corporations were parties to an existing plan of reorganization, the taxpayer's share in the old corporation's assets would not be subject to tax unless in addition to stock for stock he received "boot" money or property which, in effect, was a distribution of taxable dividends out of his ratable share of corporate earnings and profits accumulated subsequent to the year 1932. Here, in addition to stock in the new corporation, the taxpayer received a net sum of $60,998.63 as his share of the accumulated profits of the old corporation. It is conceded, however, that taxpayer reinvested $39,500 thereof in stock of the new corporation and that therefore, assuming a reorganization, he received a taxable dividend boot of $21,498.63.

■ Since the requisite elements of *control* and *"boot"* are clearly present, we turn to the crucial and basic issue of fact[12] as to whether there is evidence to sustain a finding that the old corporation was liquidated and its assets distributed *in pursuance of a plan of reorganiza-*

---

[10]See, Pinellas Ice Co. v. Commr. of Int. Rev. 287 U. S. 462, 53 S. Ct. 257, 77 L. ed. 428; Meyer v. United States (Ct. Cl.) 121 F. Supp. 898.

[11]Liddon v. Commr. of Int. Rev. (6 Cir.) 230 F. (2d) 304, 309.

[12]See, Dobson v. Commr. of Int. Rev. 320 U. S. 489, 64 S. Ct. 239, 88 L. ed. 248; Survaunt v. Commr. of Int. Rev. (8 Cir.) 162 F. (2d) 753, 756.

*tion* to which both the old and the new corporation were parties. When the business of a liquidated corporation is transferred to, and continued by, a new corporation, a persuasive indicium of reorganization exists when the controlling shareholders of the transferor continue their proprietary interests in the enterprise by becoming the controlling shareholders of the transferee. A mere change of corporate shell is of no significance where the business enterprise continues with substantially the same proprietary interests controlling its destiny. It is of no material importance that some of the shareholders of the transferor corporation elect to withdraw from the enterprise and therefore acquire no interest in the transferee. In the course of any reorganization, it is not unusual for some stockholders to withdraw for personal reasons or for their inability to approve of the contemplated change.[13] Here no disruption occurred in either the continuation of normal business activities or in the continuity of proprietary interests by reason of the change from the old to the new corporate shell.[14]

■ We also have the requisite of a transfer by a corporation of all or a part of its assets to another corporation. § 290.13, subd. 6(1)(c). Apparently taxpayer is of the opinion that, since the sale of the assets proceeded from the old corporation through a trustee and thence to the new corporation, rather than directly from the old to the new corporation, no transfer existed within the meaning of the statute. Although this issue has not been raised in any Minnesota decision, we adopt the prevailing view of the Federal courts that a "transfer" does not cease to be a transfer within the meaning of the statute solely because it is

---

[13]Miller v. Commr. of Int. Rev. (6 Cir.) 84 F. (2d) 415, 418; Liddon v. Commr. of Int. Rev. (6 Cir.) 230 F. (2d) 304, 308, 309.

[14]The regulations of the commissioner found in Minn. Income Tax Act and Regulations, 1947, Art. 13-14, provide:

"* * * Requisite to a reorganization under the Act are a continuity of the business enterprise under the modified corporate form, and a continuity of interest therein on the part of those persons who were the owners of the enterprise prior to the reorganization." See, also, Id. p. 200; Art. 13-15.

The Federal cases contain a similar requirement. See, Western Mass. Theatres v. Commr. of Int. Rev. (1 Cir.) 236 F. (2d) 186; Meyer v. United States (Ct. Cl.) 121 F. Supp. 898, certiorari denied, 348 U. S. 929, 75 S. Ct. 342, 99 L. ed. 728.

conducted through a third party. The intermediary is a mere conduit. It is therefore well settled that the transfer of the assets of one corporation to another through an intermediary will satisfy the statutory requirements and this is true whether the intermediary conduit be a trustee or an agent.[15]

Another requirement is that both the old corporation and the new corporation shall be "a party to the reorganization." § 290.13, subd. 1(3). A party to the reorganization is defined by § 290.13, subd. 6(2), as including "a corporation resulting from a reorganization,"[16] a description which is met by the new corporation the moment a reorganization is found. Further, since the intermediary trustee was merely conduit between the transferor and the transferee, it is clear that the old corporation was a party to the reorganizing transaction.

We have not overlooked that one of the purposes of the dissolution of the old corporation was to enable an employee, who became president of the new corporation, to own stock in the new corporation. Aside from the fact that it seems of little significance whether he held one or two shares in the old corporation at its high book value or five shares in the new corporation which sold at $100 per share, it is no longer the rule that a statutory reorganization fails to take place because the plan was motivated by a shareholder purpose and not a so-called corporate purpose. In Lewis v. Commr. of Int. Rev. (1 Cir.) 176 F. (2d) 646, 650, the court appropriately said:

"* * * To seek to differentiate between 'corporate purpose' and

---

[15]Meyer v. United States (Ct. Cl.) 121 F. Supp. 898, certiorari denied, 348 U. S. 929, 75 S. Ct. 342, 99 L. ed. 728; Survaunt v. Commr. of Int. Rev. (8 Cir.) 162 F. (2d) 753, 756; see, Bard-Parker Co. v. Commr. of Int. Rev. (2 Cir.) 218 F. (2d) 52, certiorari denied, 349 U. S. 906, 75 S. Ct. 582, 99 L. ed. 1242. We have not overlooked United States v. Arcade Co. (6 Cir.) 203 F. (2d) 230, certiorari denied, 346 U. S. 828, 74 S. Ct. 48, 98 L. ed. 352, which probably presents a contrary view. The Arcade decision was, however, distinguished in Liddon v. Commr. of Int. Rev. (6 Cir.) 230 F. (2d) 304, certiorari denied, 352 U. S. 824, 77 S. Ct. 34, 1 L. ed. (2d) 48, and was expressly not followed in Bard-Parker Co. v. Commr. of Int. Rev. *supra.*

[16]See, also, Minn. Income Tax Act and Regulations, 1947, Art. 13-15, p. 201.

'shareholder purpose' is unrealistic and impractical, particularly with respect to closely held corporations."[17]

The motive of the stockholders is immaterial, if the reorganization of the corporate business is in fact accomplished. Survaunt v. Commr. of Int. Rev. (8 Cir.) 162 F. (2d) 753, 757.

In the light of the entire evidence as presented by the stipulation of the parties, we can only conclude that the findings of fact by the Board of Tax Appeals are reasonably sustained by the evidence and that its decision has a justifiable basis in both law and fact.

Since the Minnesota statutes involved in this review are nearly identical to the 1939 Internal Revenue Code, 53 Stat. 37, 39, 40, §§ 112(a), 112(b)(3), 112(c), 112(g), and 112(h), and contain no material differences bearing upon the outcome of this case, we have relied to a considerable extent upon Federal decisions involving substantially the same questions.[18] The effect of Federal tax cases has previously been determined by this court. In cases where the state tax statute is substantially the same as the Federal statute, the construction of the Federal act prior to its adoption by the state is deemed controlling in construing the state statute. See, State v. Stickney, 213 Minn. 89, 5 N. W. (2d) 351; National Bank of Commerce v. Chicago, B. & N. R. Co. 44 Minn. 224, 46 N. W. 342, 9 L. R. A. 263. Although Federal cases subsequent to our adoption of the income tax laws of 1933 are not necessarily controlling on this court, they are of persuasive value where we have no decisions to the contrary. Drew v. Commr. of Taxation, 222 Minn. 186, 23 N. W. (2d) 565.

We find no merit in taxpayer's further allegation that an affirmance of the decision of the Board of Tax Appeals results in the establishment of a rule of taxation violating Minn. Const. art. 9, § 1, which provides that "Taxes shall be uniform upon the same class of subjects, * * *." The legislature has a wide discretion in classifying subjects for taxation and the requirement of the uniformity clause is only that those *similarly*

---

[17]See, Spear, *"Corporate Business Purpose" in Reorganization,* 3 Tax L. Rev. 225, 242 to 243.

[18]See, Abdnor, *Notable Differences in State and Federal Income Tax Statutes,* 38 Minn. L. Rev. 1, 2.

*situated* should be treated alike.[19] The legislative classification is binding on the courts unless clearly arbitrary.[20] The reason for the more favorable tax treatment of distributions in liquidations *which are not a part of a reorganization* is that such distributions are treated as payment in exchange for the shareholder's stock rather than as ordinary dividends.[21] It is in the nature of a sale or exchange of a capital asset, whereas the receipt of an ordinary dividend bears no resemblance to such sale or exchange. A taxpayer who shares, however, in a distribution which is a part of a plan of a reorganization is not similarly situated and there is a reasonable basis for putting him in a different classification whereby he is taxed at normal income rates.

The decision of the Board of Tax Appeals is affirmed.

Affirmed.

MR. JUSTICE THOMAS GALLAGHER took no part in the consideration or decision of this case.

---

[19] E. g., Hassler v. Engberg, 233 Minn. 487, 48 N. W. (2d) 343; see, 18 Dunnell, Dig. (3 ed.) § 9140(4).

[20] Id.

[21] 1 Mertens, Law of Federal Income Taxation, § 9.63.