GILDEA, Chief Justice.
*372 The question is this case is whether the sales tax exemption in Minn. Stat. § 297A.68, subd. 5 (2018), for the purchase of capital equipment, applies to items that relator Kroll Ontrack, LLC purchased. The Commissioner of Revenue concluded that the exemption did not apply, and the tax court affirmed. Because we agree that Kroll does not qualify for the exemption, we affirm the tax court.
FACTS
Kroll Ontrack, LLC, is a Minnesota limited liability company that sells technology-driven services to law firms, corporate law departments, and government entities. At issue in this case are Kroll's electronic-discovery and document-review services. To provide these services, Kroll uses two internet-based programs that allow its customers to maintain private databases of litigation documents and to sort, search, and produce relevant documents from those databases. Kroll's programs are called Advanceview and Inview, and they work together.
Through Advanceview, Kroll's customers upload their documents to Kroll's servers. If any documents are in a format that Advanceview cannot recognize-for example, an e-mail file-Advanceview will convert the format of the documents into something it can recognize. Using Advanceview, customers can then cull down the number of relevant documents in their individual databases using keyword searches. For example, this process can narrow the number of documents that would be responsive to a discovery request from 100,000 to 40,000.
The documents identified in Advanceview are then transferred to the Inview system where customers can further sort the documents using several tools.[1] With Inview's "Workflow Automation" tool, customers can find documents that they want distributed for further processing and have those documents automatically distributed to a reviewer. For example, foreign-language documents could be distributed to a translator fluent in that language or technical documents could be distributed to a person with the required technical background. In addition, Inview allows customers to use a form of machine learning to search and to categorize their documents. To use this tool, the customer must set up a number of categories-for example, responsive, nonresponsive, and privileged-and then organize a sample of documents into each category. Inview observes how the customer organized the sample of documents and sorts the rest of the database in the same way.
Once the customer has completed its document review, Inview allows the customer *373 to prepare the documents selected for production in discovery. Customers are able to select the format for the documents to be produced and can continue to view them electronically through the Inview platform.
Kroll's customers access Advanceview and Inview online using a set of login credentials that are specific to each customer. Thus, customers have access only to their own collection of documents, and cannot access or view other customers' litigation documents. Every customer does, however, get to use the algorithms, protocols, and formulas that run Advanceview and Inview.
From March 1, 2011, to November 30, 2012, Kroll purchased machinery and equipment needed to run its computer system. Specifically, Kroll purchased computer hardware, computer software, and environmental controls, such as "redundant power, redundant cooling, and back-up generators." Kroll paid Minnesota sales tax on its purchases.
In 2014, Kroll filed two requests for a refund[2] of the sales tax it paid on the machinery and equipment described above, asserting that these items qualified as exempt capital equipment. In particular, Kroll claimed that its purchases met the requirements of Minn. Stat. § 297A.68, subd. 5(a), which provides an exemption for "machinery and equipment used primarily to electronically transmit results retrieved by a customer of an online computerized data retrieval system." The statute defines the online data retrieval system that qualifies for this exemption as "a system whose cumulation of information is equally available and accessible to all its customers." Id. , subd. 5(d)(8).
The Commissioner of Revenue denied Kroll's capital-equipment refund claim, concluding that Kroll's system did not qualify for the exemption because it did not have a cumulation of information that was equally accessible to all of Kroll's customers. According to the Commissioner, the cumulated information on Kroll's system is each customer's documents and this information is not equally accessible because customers have access only to their own documents, not to all customers' documents.
Kroll appealed the Commissioner's determination to the tax court and the tax court affirmed. Like the Commissioner, the tax court determined that Kroll's system does not qualify for the exemption because the customer documents on the system are not equally accessible amongst all customers. The tax court held that that "subdivision 5 plainly requires that all information on the system be 'equally available and accessible to all [ ] customers,' " not just "some of the information." Kroll Ontrack, LLC v. Comm'r of Revenue , No. 8977-R, 2018 WL 4516998, at *5 (Minn. T.C. Sept. 14, 2018) (alteration in original). Accordingly, "Kroll's Advanceview and Inview programs may constitute an 'online computerized data retrieval system,' but not one that qualifies for the sales tax exemption under subdivision 5." Id.
Kroll appealed the tax court's decision and we issued a writ of certiorari.[3]
*374 ANALYSIS
Our review of decisions from the Minnesota Tax Court is limited. We review whether the tax court had jurisdiction, whether its decision is "justified by the evidence," and whether the court made an error of law. Minn. Stat. § 271.10, subd. 1 (2018). In this case, there is no question of jurisdiction and the parties have stipulated to the facts. Accordingly, we "need only consider whether the law was properly applied." McLane Minn., Inc. v. Comm'r of Revenue , 773 N.W.2d 289, 293 (Minn. 2009). The legal question here involves statutory interpretation and our review is de novo. Lo v. Comm'r of Revenue , 892 N.W.2d 817, 820 (Minn. 2017). The goal in all statutory interpretation is to effectuate the intent of the Legislature. Minn. Stat. § 645.16 (2018). We must presume that "the legislature intends the entire statute to be effective and certain," Minn. Stat. § 645.17(2) (2018), and construe words and phrases according to the rules of grammar and their common usage, Minn. Stat. § 645.08(1) (2018).
The statute at issue is Minn. Stat. § 297A.68, subd. 5, which exempts the purchase of capital equipment from sales tax. Capital equipment includes, among other items, "machinery and equipment used primarily to electronically transmit results retrieved by a customer of an online computerized data retrieval system." Id. , subd. 5(a). In addition, the statute defines an "online data retrieval system" as "a system whose cumulation of information is equally available and accessible to all its customers." Id. , subd. 5(d)(8). The interpretation of this exemption is a matter of first impression for our court.[4]
The parties agree that Kroll's system is (1) online, (2) computerized, and (3) retrieves data. They also agree that the documents uploaded to the system by Kroll's customers and the results that come from application of Kroll's tools to those documents are not equally accessible among Kroll's customers, but that the system's formulas, protocols, and algorithms are equally accessible. The parties' dispute focuses on what qualifies as a "cumulation of information" under the statute. The Commissioner argues that the cumulated information on Kroll's system "is the entire database of customer documents that are stored, searched and ultimately retrieved by the system's customers for production in discovery." And because each customer's documents are only accessible by that customer, the Commissioner argues that Kroll's system does not qualify. For its part, Kroll asserts that the system's cumulation *375 of information is not its customers' litigation documents, but rather the "formulas, protocols, and algorithms that make Kroll's Systems work." According to Kroll, the formulas, protocols, and algorithms that are part of the system before documents are uploaded are the "brains of the systems" and are accessible to all of its customers. Indeed, Kroll argues, these codes are what its customers pay to use. Thus, these codes should qualify as a "cumulation of information."
To resolve the parties' dispute over a "cumulation of information," we first take a broader look at the exemption. The statute exempts capital equipment used for computer systems that perform a specific function: data retrieval. See Minn. Stat. § 297A.68, subd. 5(a) (explaining that a qualifying system must "transmit results retrieved by a customer"). To retrieve means "to get back into one's grasp, possession, or control, especially from a known place or a place of storage" or "to gain access to (stored information)." The American Heritage Dictionary of the English Language 1500 (5th ed. 2011). Data-the plural of datum-is "detailed information of any kind." Webster's Third New International Dictionary 576-77 (2002). Given these definitions, virtually every computer system retrieves data. For example, Microsoft Word has a search function that allows users to search documents for specific words and phrases and Windows operating systems allow users to retrieve data by opening files and folders saved on a computer's hard drive.[5] There is no question that data retrieval is broad as applied to computer systems.
But the statute provides an exemption for only certain data retrieval systems: those with a "cumulation of information" that is equally accessible among all customers. Minn. Stat. § 297A.68, subd. 5(d)(8). According to the dictionary, cumulate means "to gather in a heap," American Heritage Dictionary , supra , at 443, or to "to enlarge (a collection) by addition of new material," Webster's , supra , at 553. And the dictionary definitions of information are broad and varied. They include "knowledge communicated by others," Webster's , supra , at 1160, and, as relevant here, "processed, stored, or transmitted data," American Heritage Dictionary , supra , at 901.
With the dictionary definitions and the full context of the statute in mind, it is clear that Kroll's proposed interpretation for "cumulation of information" is untenable. Although the dictionary definition of "information" is broad enough to encompass Kroll's interpretation, the context of the statute limits the meaning of the term. The relevant information must be that which the system accumulates-the data that Kroll's products "gather in a heap." American Heritage Dictionary , supra , at 443. This information is the customer documents that are continuously uploaded to and sorted by the system. And this information is not accessible to all customers, but is accessible only to the customer who uploaded the documents in the first instance.[6]
In other words, the formulas, protocols, and algorithms that power Advanceview *376 and Inview are not the cumulated information held in the system, as Kroll suggests, but are better understood as part of the system itself. They are the tools that search the system and retrieve specific documents from each customer's universe of information. To conclude otherwise would confuse the computer code that tells the system to retrieve data with the accumulated information that is used in, and that results from, that retrieval.[7]
After all, every data retrieval system uses formulas, protocols, and algorithms to make its systems work.[8] These computer codes are what allow the system to retrieve data. But the Legislature did not provide an exemption for all data retrieval systems. It limited the exemption to those with a "cumulation of information." We must give effect to these words of limitation. See, e.g. , Minn. Stat. § 645.16 ("Every law shall be construed, if possible, to give effect to all its provisions."); Anderson v. Comm'r of Taxation , 253 Minn. 528, 93 N.W.2d 523, 528 (1958) ("In ascertaining legislative intent a statute is to be construed as a whole so as to harmonize and give effect to all its parts, and where possible, no word, phrase, or sentence will be held superfluous, void, or insignificant.").
In sum, the "cumulation of information" on Kroll's system is its customers' litigation documents, not the formulas, protocols, and algorithms that power Kroll's system. Because Kroll's customers' documents are not equally accessible to all of its customers, Kroll's system does not qualify for the capital equipment exemption in Minn. Stat. § 297A.68, subd. 5.
CONCLUSION
For the foregoing reasons, we affirm the decision of the tax court.
Affirmed.

Although customers generally use both Advanceview and Inview to process their litigation documents, they can also upload documents directly to Inview and bypass Advanceview.

At the time of Kroll's purchases, taxpayers were required to pay sales tax on capital equipment purchases and then apply for a refund. See Minn. Stat. § 297A.68, subd. 5(a) (2012) ("The tax must be imposed and collected as if the rate under section 297A.62, subdivision 1, applied, and then refunded in the manner provided in section 297A.75."). For purchases made after June 30, 2015, capital equipment is now eligible for an exemption when purchased. See Act of Mar. 21, 2014, ch. 150, art. 2, § 4, 2014 Minn. Laws 53, 86.

In addition to Kroll's sales tax refund requests, the tax court also considered a refund request under Minn. Stat. § 297A.68, subd. 2(a)(3) (2012), for the sales tax Kroll paid on the electricity used to power its equipment. The tax court determined that Kroll's purchases did not qualify for an industrial-production exemption. Kroll Ontrack, LLC , 2018 WL 4516998, at *7. Kroll indicated in its Statement of the Case that it would challenge this aspect of the tax court's decision on appeal to our court, but it did not do so in its brief or at oral argument. Thus, Kroll has forfeited this issue and we will not address it. See In re Application of Olson for Payment of Servs. , 648 N.W.2d 226, 228 (Minn. 2002).

The tax court has interpreted the exemption on one occasion. In Dexma, Inc. v. Commissioner of Revenue , the tax court concluded that a home-mortgage system qualified for the exemption. No. 7656-R, 2005 WL 626620, at *5 (Minn. T.C. Mar. 8, 2005). Kroll argues that Dexma , while not binding on our court, is persuasive. The Commissioner, on the other hand, argues that Dexma "provides little, if any, persuasive value to the resolution of the issue before this court." In addition, the tax court in this case determined that Dexma was "largely uninformative." Kroll Ontrack , 2018 WL 4516998, at *5. We agree with the Commissioner and the tax court that the facts of Dexma are too dissimilar to this case for the decision to be helpful. Because the opinion is of little assistance here, we express no view on the validity of the analysis or decision in that case.

See Elaine Marmel, Teach Yourself Visually Office 2013 123 (Jody Lefevere et al. eds., 2013) (explaining how users can search a document for specific text); id. at 4-5, 16-19 (explaining how to retrieve data on Windows using the files and folders system).

We need not decide whether the "cumulation of information" is the universe of documents that the customer uploads onto Kroll's system or the documents that result after Kroll's programs are applied to the universe of documents because neither set of information is available to Kroll's other customers.

Kroll argues that this interpretation is contrary to the plain language of the statute because it changes the definition of an online data retrieval system from "a system whose cumulation of information is equally accessible" to a system that retrieves results for "a customer whose cumulation of information is equally accessible." We are not persuaded. The only cumulated information in Kroll's system are its customer's documents. Accordingly, these documents must be equally accessible to qualify for the exemption provided by subdivision 5(a).

See Allen Cook Barr, Note, Guardians of Your Galaxy S7: Encryption Backdoors and the First Amendment , 101 Minn. L. Rev. 301, 304 (2016) (explaining that all computer programs consist of these "sets of instructions that tell the various hardware components of a computer ... to perform a particular action") (citing Tony Gaddis, Starting out with C++: From Control Structures Through Objects 4-6 (7th ed. 2012)).