Carol J. LaMONT, Appellant,

v.

INDEPENDENT SCHOOL DISTRICT # 728, Respondent.

No. A10–0543.

Supreme Court of Minnesota.

May 16, 2012.

James H. Kaster, David E. Schlesinger, Adam W. Hansen, Nichols Kaster PLLP, Minneapolis, MN, for appellant.

Thomas A. Harder, Greta Bauer Reyes, Foley & Mansfield, PLLP, Minneapolis, MN, for respondent.

Justin D. Cummins, Miller O'Brien Cummins, PLLP, Minneapolis, MN; Leslie L. Lienemann, Culberth & Lienemann, LLP, St. Paul, MN, for amicus curiae National Employment Lawyers Association, Minnesota Chapter.

Lori Swanson, Attorney General, Alan I. Gilbert, Solicitor General, Margaret Jacot, Assistant Attorney General, St. Paul, MN, for amicus curiae Minnesota Attorney General.

## OPINION

MEYER, Justice.

Appellant Carol LaMont filed suit against her employer, Independent School District # 728 (the School District), for violations of the Minnesota Human Rights Act (MHRA), Minn.Stat. ch. 363A (2010). LaMont claimed that she had been subjected to a hostile work environment based on her sex and that she had suffered sexual harassment. The district court granted summary judgment to the School District on both claims, concluding that a hostile work environment based on sex was not actionable, and even if it were, LaMont had not established that the conduct of the School District's employees was sufficiently severe or pervasive.

The court of appeals affirmed, holding that the MHRA does not protect individuals from a hostile work environment based on sex unless the conduct falls within the definition of "sexual harassment" in the MHRA. We conclude that a cause of action for a hostile work environment based on sex is actionable under the MHRA. But we affirm the grant of summary judgment to the employer because the employee's allegations are insufficient to state a claim of hostile work environment.

LaMont began working as a custodian at Elk River High School in 2002. In April 2006, Doug Miner was hired as the night lead custodian. Before Miner was hired, the custodial staff was subject to little supervision and there was significant turnover in management. Miner was hired to improve custodial services at the high school and required accountability among the custodial employees. As the night lead, Miner supervised three male custodians and two female custodians, including LaMont. Two months later, Miner was promoted to head custodian. In this position, he no longer directly supervised LaMont but indirectly supervised her as the head of all custodial workers.

Miner made several comments to his employees and co-workers that indicated

his negative view of women in the workplace. In his position as night lead, Miner told a male employee that he did not want any women on his crew. Miner stated to LaMont in May 2006, "I have no intention of ever asking you anything." In this same May 2006 encounter, Miner described a coworker's wife as "not bad," and stated that "[w]omen have their place. You've got to keep them in their place." Miner commented on a separate occasion that the only place for women is the "kitchen and the bedroom." In another instance, LaMont saw Miner lifting a heavy object and warned Miner not to "screw up" his back. In response, Miner stated, "The only screwing I do is with my wife." In December 2006, in front of LaMont and two other custodians, Miner stated, "There is a time and a place for women and Elk River High School is not the time or the place."

Miner differentiated female workers from male workers. Female custodians were permitted to take breaks in a separate location from Miner but had to check in via radio. Miner asserted that he required these check-ins to ensure accountability. The two female custodians were also required to put their lunches in the break room before clocking in at the beginning of their shifts. Miner physically separated the work areas of the men and the women, and as head custodian, he instructed the night and day leads to separate the men and the women. Additionally, Miner prohibited the female custodians from talking unless they were on a break. Miner instructed his night lead custodian to tell the two female custodians they could not talk to each other or to the male custodians. Miner told a male custodian not to speak to the two female custodians and that he could be "fired within 30 days" if he associated with the female custodians. Miner explained that his instructions about

refraining from talking were designed to promote productivity.

LaMont is not the only Elk River High School employee with documented problems with Miner. One male employee filed a complaint against Miner because the employee was upset about Miner yelling at him. In addition, a lead custodian sent a letter to the district superintendent complaining that Miner's conduct harassed the whole crew, not just the women.

On at least two separate occasions, LaMont reported Miner's comments about women and Miner's requirement of radio check-ins to the high school Principal and her union steward. The Principal responded that he would monitor the situation. In September 2006, a group of the high school custodial staff, including LaMont, met with the Principal and discussed, among other topics, the separation of male and female work areas, and the instruction that the female employees not talk, as well as Miner's comments to the custodians. The Principal responded that he would talk to Miner's supervisors. Miner's comment about the time and the place for women led LaMont to again report Miner's conduct to the Principal and the union steward, and led to another meeting of all the custodians.

LaMont also reported Miner's behavior to the Supervisor of Building and Grounds, to the Manager of Facilities, and to Human Resources. In response to a letter from the Principal to the Superintendent, the School District hired a private investigator to investigate the custodial staff's complaints. LaMont met with the investigator in April 2007 and repeated her complaints about Miner, including Miner's multiple comments about the place of women, the differential treatment of women regarding breaks, and the instruction that the women not talk during work hours. The investigator doubted La-

Mont's credibility and told the School District's attorney that her complaints were meritless.

LaMont filed suit, alleging that Miner's conduct violated section 363A.08 of the MHRA. LaMont articulated two theories of liability in her complaint: first, that she was subjected to a hostile work environment; and second, that she was subjected to sexual harassment.

The School District moved for summary judgment on all claims. At the summary judgment hearing, LaMont chose to pursue only her hostile work environment claim. The district court granted summary judgment on the hostile work environment claim on the basis that the MHRA does not permit a hostile work environment claim based on harassment that does not meet the definition of sexual harassment under Minn.Stat. § 363A.03, subd. 43.[1] Because most of the harassing conduct was not sexual in nature and, therefore, did not meet the definition of sexual harassment, the hostile work environment claim failed. The district court further concluded that even if a hostile work environment claim is permitted for harassing conduct based on sex, the employee's claim still failed because the alleged conduct was not sufficiently severe and pervasive to survive summary judgment. The court of appeals affirmed in an unpublished opinion, holding that sexual harassment is the only form of harassment prohibited by the MHRA and, therefore, a hostile work environment claim cannot be based on harassing behavior that does not meet the definition of sexual harassment under section 363A.03, subd. 43. *LaMont v. Indep. Sch. Dist. No. 728*, No. A10–0543, 2011 WL 292131 (Minn.App. Feb. 1, 2011).

We answer the following questions in this appeal:

1. May a hostile work environment claim under the MHRA be based on harassing conduct that is based on sex, even if the offending conduct is not sexual?

2. Viewing the evidence in the light most favorable to the plaintiff, the nonmoving party, is the evidence of the employer's misconduct sufficiently hostile or abusive to support a hostile work environment claim?

## I.

We turn to the first question: whether a hostile work environment claim brought under the MHRA may be based on harassing conduct that is based on sex, even if the offending conduct is not sexual. Matters of statutory interpretation are questions of law that we review de novo. *See State v. Leathers*, 799 N.W.2d 606, 608 (Minn.2011). When interpreting a statute, the role of the court is to "ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2010). If the language of a statute is plain and unambiguous, it is presumed to manifest legislative intent and a court must give it effect. *Burkstrand v. Burkstrand*, 632 N.W.2d 206, 210 (Minn.2001).

The MHRA provides, in pertinent part: [I]t is an unfair employment practice for an employer, because of race, color, creed, religion, national origin, sex, marital status, status with regard to public assistance, membership or activity in a local commission, disability, sexual orientation, or age to . . . discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment.

Minn.Stat. § 363A.08, subd. 2(3). Discrimination is defined under the statute to

---

1. The court also dismissed the sexual harassment claim.

mean "segregate or separate, and for purposes of discrimination based on sex, it includes sexual harassment." Minn.Stat. § 363A.03, subd. 13. Sexual harassment is defined as follows:

"Sexual harassment" includes unwelcome sexual advances, requests for sexual favors, sexually motivated physical contact or other verbal or physical conduct or communication of a sexual nature when:

(1) submission to that conduct or communication is made a term or condition, either explicitly or implicitly, of obtaining employment, public accommodations or public services, education, or housing;

(2) submission to or rejection of that conduct or communication by an individual is used as a factor in decisions affecting that individual's employment, public accommodations or public services, education, or housing; or

(3) that conduct or communication has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or housing environment.

Minn.Stat. § 363A.03, subd. 43.

LaMont does not claim that the employer's offending conduct constitutes "sexual harassment" as defined by subdivision 43. Rather, her argument is that sexual harassment is merely one type of harassing behavior that constitutes sex discrimination under the MHRA. Her claim is that the MHRA prohibits workplace behavior that is so severe as to discriminate in the terms and conditions of employment—the shorthand for such a claim is "hostile work environment." According to the School District, the MHRA limits hostile work environment claims to harassment of a sexual nature, because language about a hostile work environment appears only within the definition of sexual harassment in the MHRA.

■ The court of appeals agreed with the School District. The court reasoned that the MHRA defines discrimination based on sex to include sexual harassment and the definition of sexual harassment therefore limits sex discrimination claims to conduct or communication of a sexual nature. *LaMont*, No. A10–0543, 2011 WL 292131, at *2–3. For the reasons set forth below, we agree with LaMont that the MHRA permits a hostile work environment claim based on sex, separate and apart from its prohibition of sexual harassment that creates a hostile work environment.

First, the statutory definition of discrimination under section 363A.03, subdivision 13, does not limit claims of a hostile work environment to sexual harassment. The statute states that discrimination on the basis of sex "includes" sexual harassment. The use of the word "includes" does not narrow claims of discrimination based on sex to claims of sexual harassment. The word "includes" is not exhaustive or exclusive. *See American Heritage Dictionary* 888 (5th ed.2011) (defining "include" as "(1) To contain or take in as a part, element, or member; (2) To consider as part of or allow into a group or class.") The use of the word "includes" indicates legislative intent that a claim of sex discrimination in the terms and conditions of employment may be established by proof of sexual harassment, but that sexual harassment does not provide the exclusive means to establish a claim of sex discrimination. Minnesota Statutes § 363A.03, subd. 43, merely explicitly identifies one form of sex discrimination (sexual harassment) prohibited by the MHRA.

Second, we have already recognized that sexual harassment is just one form of hostile work environment that constitutes sex discrimination in the terms and conditions of employment. In the seminal case of *Continental Can Co. v. State*, the plaintiff alleged that her employer discriminated against her on the basis of sex with respect to the terms and conditions of her employment. 297 N.W.2d 241, 245 (Minn. 1980), *superseded by statute*, Act of March 23, 1982, ch. 619, §§ 2–3, 1982 Minn. Laws 1508, 1511, *as recognized in Frieler v. Carlson Mktg. Grp., Inc.*, 751 N.W.2d 558, 564–65 (Minn.2008). The plaintiff was subject on multiple occasions to verbal sexual advances, sexually derogatory remarks, and sexual touching by her co-workers. *Id.*, 297 N.W.2d at 244. The question presented by *Continental Can* was whether sexual harassment constituted sex discrimination in the terms and conditions of employment. *Id.* at 245. At the time *Continental Can* was decided, the MHRA did not yet include sexual harassment in the definition of sex discrimination nor was sexual harassment specifically defined. We resolved *Continental Can* by interpreting the precursor to the main provision of section 363A.08 prohibiting sex discrimination. We held that sexual harassment was prohibited by the MHRA as one type of sex discrimination. *Id.* at 249.

We recognized that certain treatment of women is so extreme that the treatment can affect a woman's conditions of employment, amounting to discrimination. We reasoned that "[o]ne of the purposes of the

[MHRA] is to rid the workplace of disparate treatment of female employees merely because they are female." *Id.* at 248. We noted that although disparate treatment of female employees is obvious when promotion or retention is conditioned on sexual favors, disparate treatment is "as invidious, although less · recognizable," when sexual harassment is directed at an employee because she is female. *Id.* We concluded that sexual harassment strikes at the conditions of employment: "[w]hen sexual harassment is directed at female employees because of their womanhood, female employees are faced with a working environment different" than that of male employees. *Id.* Finding sexual harassment actionable, we held that Continental Can "committed an unfair employment practice by discriminating against [the employee] in the conditions of employment on the basis of sex." *Id.* at 250.[2]

Our reasoning in *Continental Can* applies with equal force to a continuing pattern of hostile and offensive treatment of women in the workplace based on their sex. As *Continental Can* recognized, one type of behavior that can alter a female employee's conditions of employment, amounting to discrimination, is conduct that amounts to sexual harassment. Another type of behavior that can alter a female employee's conditions of employment, amounting to discrimination, is verbal and physical harassment based on sex. This, too, is "disparate treatment of female employees merely because they are female," the kind of behavior we have said the MHRA seeks to eliminate. *Id.* at 248;

**2.** Following *Continental Can*, the Legislature amended the MHRA to specifically include sexual harassment as a form of discrimination based on sex. As amended, the MHRA provides that "the term 'discriminate' includes segregate or separate, and for purposes of discrimination based on sex, it includes sexual harassment." *See* Act of March 23, 1982, ch. 619, §§ 2–3, 1982 Minn. Laws 1508, 1511 (codified at Minn.Stat. § 363A.03, subd. 13 (2010)). In addition, the amendment expanded *Continental Can*'s prohibition on sexual harassment to areas beyond the employment context to include public accommodations, public services, education, or housing. *Id.*

cf. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (concluding that Title VII protects against conduct that is severe or pervasive enough to create an objectively hostile or abusive work environment).

Third, we find support for our conclusion in this case in federal court decisions interpreting similar language found in Title VII. *See, e.g., Cont'l Can*, 297 N.W.2d at 246 (noting that federal court decisions are instructive and have been applied by our court when construing the MHRA). In *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the United States Supreme Court held that a plaintiff may prove a violation of Title VII by showing that discrimination based on sex has created a hostile or abusive work environment. The Court held that sexual harassment was actionable under Title VII. *Id.* at 66–67, 106 S.Ct. 2399. In *Harris*, the Court explained that Title VII is violated "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." 510 U.S. at 21, 114 S.Ct. 367 (citations omitted) (internal quotations omitted). The *Harris* Court looked beyond sexual harassment claims and referenced harassment claims based on other protected statuses, focusing on whether the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their protected status. *Id.*

■ For the foregoing reasons, we conclude that the MHRA permits a hostile work environment claim based on sex. We hold that verbal and physical harassment directed at an employee because of her sex may constitute discrimination in the terms and conditions of employment.

## II.

■ We next address whether the alleged conduct of LaMont's supervisor was severe or pervasive enough to support a hostile work environment claim. The district court granted summary judgment to the School District on this issue.[3] We review a grant of summary judgment de novo to determine whether there is any genuine issue of material fact and whether the district court erred in applying the law. *Zip Sort, Inc. v. Comm'r of Revenue*, 567 N.W.2d 34, 37 (Minn.1997). We view the record in the light most favorable to LaMont, the nonmoving party. *Wartnick v. Moss & Barnett*, 490 N.W.2d 108, 112 (Minn.1992).

■ To succeed on a hostile work environment claim, a plaintiff must prove that

(1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on membership in a protected group; (4) the harassment affected a term, condition or privilege of her employment; and (5) the employer knew of or should have known of the harassment and failed to take appropriate remedial action.

*Goins v. W. Grp.*, 635 N.W.2d 717, 725 (Minn.2001) (citing *Carter v. Chrysler Corp.*, 173 F.3d 693, 700 (8th Cir.1999)). In addition, harassing conduct is not actionable unless it is "so severe or pervasive" as to alter the conditions of the plain-

---

**3.** The district court concluded that the MHRA did not permit a hostile work environment claim on the basis of sex. The court then assumed for purposes of the motion that the claim was permitted and decided that the claim nevertheless failed because the conduct was not severe or pervasive.

tiff's employment and create an abusive working environment. *Id.* (quoting *Meritor,* 477 U.S. at 67, 106 S.Ct. 2399). We noted in *Goins* that the work environment must be both objectively and subjectively offensive in that a reasonable person would find the environment hostile or abusive and the victim in fact perceived it to be so. *Id.* And finally, in *Goins* we stated that in determining "whether an environment is sufficiently hostile or abusive to support a claim, courts look at the totality of the circumstances." *Id.* Those circumstances include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 787–88, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)) (internal quotations omitted).

The district court in this case granted summary judgment in favor of the School District on LaMont's hostile work environment claim, concluding that the School District's conduct was not sufficiently severe or pervasive to support La-Mont's claim. On appeal, the parties' arguments have focused on this aspect of the hostile work environment standard—whether the work environment was sufficiently hostile or abusive to support La-Mont's claim. Therefore, we examine La-Mont's proof to determine whether the standard is met. In examining this proof, we look only at the behavior that LaMont claims was directed at her because she is female. *See id.* (noting that the harassment must be "based on membership in a protected group").

The totality of the circumstances lead us to conclude that Miner's conduct, while at times inappropriate and offensive, was not sufficiently hostile or abusive to support a hostile work environment claim.

LaMont identifies several statements Miner made over the course of about 1 year as contributing to a hostile work environment. Miner's comments about women in the workplace were offensive but infrequent. Miner's statements were not severe or intimidating. None of Miner's comments were physically threatening. Miner's statements were more akin to "mere offensive utterance[s]." *Id.* (citations omitted). While LaMont found these statements to be abusive, they do not appear to have unreasonably interfered with her ability to do her job.

LaMont identifies additional conduct by Miner—namely differential treatment of women, separation of male and female work areas, and instruction that women refrain from speaking—as contributing to a hostile work environment. Although La-Mont did not like the changes Miner made to her workplace, she does not demonstrate that there was a genuine issue of material fact about whether Miner's behavior impaired her job performance. The female custodians were still permitted to take breaks where they chose, but were required to check in with Miner. The check-in requirement, even if applied to women only, is not severe or threatening conduct, nor is it such that it interferes with LaMont's ability to perform the duties of a custodian. An objectively reasonable person would not find such a requirement abusive.

LaMont similarly fails to demonstrate that there was a genuine issue of material fact about whether the separation of work areas and the restriction on talking to other employees interfered with her work performance. Each custodian at the high school is required to clean a specified work area by himself or herself. LaMont does not identify how working in a different area from men and limiting her talking

during work interfered with job performance.

We also consider that Miner sometimes subjected both female and male employees to certain harassing behavior. There are multiple instances in the record of Miner yelling and banging his fists on tables in conversations with male employees. One male employee filed a complaint against Miner and another employee characterized Miner's behavior as harassment of the entire work crew. This evidence is important because it suggests that Miner's harsh conduct was directed at the entire workforce and not at LaMont personally or the female employees exclusively.

■ While the severe and pervasive standard is not a "mathematically precise test," *Harris*, 510 U.S. at 22, 114 S.Ct. 367, the standard is one that presents "a high threshold." *Cummings v. Koehnen*, 568 N.W.2d 418, 424 (Minn.1997). Decisions from the federal courts interpreting the severe and pervasive standard support our conclusion that the behavior in this case is not severe and pervasive. *Compare Hervey v. Cnty. of Koochiching*, 527 F.3d 711, 721–22 (8th Cir.2008) (affirming grant of summary judgment to the defendant-employer where the plaintiff was criticized and yelled at by supervisors and had duties reduced and responsibilities reassigned, but did not prove any actions were taken because she was a woman), *and Smith v. Ashland, Inc.*, 179 F.Supp.2d 1065, 1070 (D.Minn.2000) (concluding that "tasteless and inappropriate" banter was not severe and pervasive enough to create an actionable hostile work environment when the comments were not directed at the plaintiff, but merely uttered in her presence), *and Thompson v. Campbell*, 845 F.Supp. 665, 673–74 (D.Minn.1994) (granting summary judgment to defendant-employer despite evidence that a supervisor commented on women's breasts and but-

tocks, discussed his sexual fantasies, and physically touched female employees, because the conduct was not threatening or humiliating, and did not interfere with the plaintiff's employment); *with Kopp v. Samaritan Health Sys., Inc.*, 13 F.3d 264, 266–67 (8th Cir.1993) (denying summary judgment to defendant-employer when a doctor yelled, swore, and threw objects at female employees and pushed the plaintiff, grabbed plaintiff by her clothing, and threw a stethoscope at her), *and Hall v. Gus Const. Co.*, 842 F.2d 1010, 1012 (8th Cir.1988) (affirming a finding of a hostile work environment and a verdict for plaintiffs where an abusive workplace included derogatory nicknames for women, requests for sex, unwelcome physical touching, and male co-workers exposing themselves), *and Jenson v. Eveleth Taconite Co.*, 824 F.Supp. 847, 879–80 (D.Minn.1993) (denying summary judgment to defendant-employer where the "sexualized" workplace included visual depictions of sex and female sex objects; rampant use of "anti-female" language, such as references to female body parts, proposals for sexual relationships, discussions of sexual exploits, and specific comments about female employees' sex lives; simulated oral sex; and objectionable touching). *But see Sturm–Sandstrom v. Cnty. of Cook*, 552 F.Supp.2d 945, 951 (D.Minn.2008) (denying summary judgment to defendant-employer where plaintiff alleged a hostile work environment based on the Cook County Sheriff's derogatory comments, differential and degrading treatment, denial of training opportunities to women, and male co-workers' social ostracization of plaintiff).

We conclude that Miner's comments about women in the workplace were offensive and inappropriate but that the comments were infrequent and not severe. The rules about not talking during work hours and checking in before breaks were

not abusive, either objectively or subjectively, and LaMont did not show that the rules interfered with her ability to perform the duties of her job. In sum, the totality of the circumstances of LaMont's claim of a hostile work environment are not sufficiently hostile or abusive to withstand summary judgment.

Affirmed.

PAGE, Justice (dissenting).

*It is the public policy of this state to secure for persons in this state, freedom from discrimination . . . in employment because of . . . sex.*

Minn.Stat. § 363A.02, subd. 1(a) (2010).

To fulfill that public policy, the MHRA prohibits an employer from discriminating against a person on the basis of sex "with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment." Minn.Stat. § 363A.08, subd. 2(3) (2010). The court holds that a party can state a claim for hostile work environment based on sex even if the allegations do not constitute sexual harassment. It also holds that the facts do not establish that LaMont's employer's conduct was sufficiently severe or pervasive to survive summary judgment. The court is correct in concluding that sex discrimination under the MHRA includes claims alleging differential treatment based on sex that results in a hostile work environment, even though the alleged conduct does not constitute sexual harassment under the MHRA. Inexplicably, the court also holds that the clearly discriminatory conduct alleged here is not actionable.

The elements a plaintiff must establish to prove a disparate treatment hostile work environment sex discrimination claim are that the plaintiff is a member of a protected group who was subject to harassment based on her sex, that the harassment affected a term, condition, or privilege of employment, and that the employer knew or should have known of the harassment and failed to adequately respond. *Carter v. Chrysler Corp.,* 173 F.3d 693, 700 (8th Cir.1999). LaMont alleges that she was subjected to a number of abusive actions by her supervisor simply because she was female, including derogatory comments that he did not want women on his crew, that "[w]omen have their place" in society—the kitchen and the bedroom, that Elk River High School was no place for women, and that "[t]he only screwing [he] do[es] is with [his] wife." LaMont alleges that male employees were not subject to these types of demeaning and derogatory comments simply because of their sex. In addition, LaMont alleges that she and the other woman on her crew had to check in before taking breaks, their work spaces were segregated from the male employees' work spaces, they were not permitted to talk to each other unless on break, and they were not permitted to talk to the men. Thus, LaMont has alleged facts that, if proved, would establish the elements of a disparate treatment hostile work environment sex discrimination claim.

In order to prevail on such a claim, the plaintiff must also demonstrate that the alleged conduct was "so severe or pervasive as to alter the conditions of the [plaintiff's] employment and create an abusive working environment." *Goins v. W. Grp.,* 635 N.W.2d 717, 725 (Minn.2001) (quoting *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)) (internal quotation marks omitted). In *Goins,* we said we look at the totality of the circumstances to determine whether the conduct is severe and pervasive. *Id.* "Pervasive" means "[h]aving the quality or tendency to pervade or permeate." *American Heritage Dictionary* 1318 (5th ed.2011). "Pervade," in turn, means "[t]o

be present throughout." *Id.* "Severe" means "[u]nsparing, harsh, or strict" or "[c]ausing great discomfort, damage, or distress." *Id.* at 1605.

The court concludes that Miner's statements and conduct toward LaMont were not sufficiently severe or pervasive to survive summary judgment. I disagree. On this record, there can be no dispute that Miner's statements and conduct would affect LaMont's terms, conditions, or privileges of employment. Moreover, the statements by Miner and his conduct occurred over a period of months and were directed at LaMont because she was a woman. When treatment "is directed at female employees because of their womanhood, female employees are faced with a working environment different from the working environment faced by *male* employees." *Cont'l Can Co. v. State,* 297 N.W.2d 241, 248 (Minn.1980) (emphasis added), *superseded by statute, as explained in Cummings v. Koehnen,* 568 N.W.2d 418, 423 n. 6 (Minn.1997). Thus, in my view, the supervisor's statements *and* conduct as alleged are sufficiently severe and pervasive to survive summary judgment. No person should have to endure such treatment in the workplace simply because she was born female.[1]

In concluding that the statements and conduct were not sufficiently severe and pervasive, the court relies on and follows several other courts—including federal courts—which set a very high standard for setting out a claim of hostile work environment sex discrimination. But this case does not require us to interpret Title VII or some other jurisdiction's anti-discrimination law. Here, we are asked to interpret Minnesota law. The standard for bringing a claim in those other jurisdictions is inconsistent with Minnesota's stated public policy. Applying the standard the court adopts will not "secure for persons in [Minnesota] freedom from discrimination" in employment because of one's sex. Minn.Stat. § 363A.02, subd. 1(a).

Therefore, I respectfully dissent.

ANDERSON, PAUL H., Justice (dissenting).

I join in the dissent of Justice Page.

---

1. The court suggests Miner's "harsh conduct" toward LaMont may not have been motivated by LaMont's sex because Miner treated male employees poorly too. I am troubled by this reasoning for two reasons. First, it is clear from the record that Miner's acts were directed at LaMont because of her womanhood. It is also troubling because an employee subject to discriminatory conduct by "an 'equal opportunity harasser' " is nevertheless protected by the MHRA. *Cummings,* 568 N.W.2d at 422–23.