MCKEIG, Justice (dissenting).
I dissent because I believe that the court's interpretation of the Minnesota False Claims Act's ("MFCA") tax bar is substantially broader than the Legislature intended. Minnesota Statutes § 15C.03 (2016) is modeled on the federal False Claims Act's ("FCA") tax bar, 31 U.S.C. § 3729(d) (2012), which was designed to prevent private citizens from bringing qui tam actions to collect taxes on behalf of the government. The case before us today, however, revolves around individual and business fee-payers, and telephone service providers who are serving as fee-collectors. Because the MFCA's tax bar was not intended to preclude qui tam actions against private entities who are obligated to collect government-mandated fees, I would hold that the district court erred by dismissing Phone Recovery Services' complaint and would reverse.
*326 I.
The court concludes that Minn. Stat. § 15C.03 is unambiguous. I disagree. Although I agree with the definition of "taxation" adopted by the court, I believe that the phrase "relating to" has another reasonable meaning which better serves the intent behind the MFCA's tax bar.[1] I explain my reasons below.
It is true that we have previously defined "relating to" as "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." 500, LLC v. City of Minneapolis , 837 N.W.2d 287, 291 (Minn. 2013) (quoting Morales v. Trans World Airlines, Inc. , 504 U.S. 374, 383, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) ). The court seizes upon this precedent to conclude that "relating to taxation" can encompass any statute that has a connection with taxation. However, in the context of this case, I believe that an equally reasonable interpretation of "relating to" would be "about." See The New Roget's Thesaurus in Dictionary Form 397-98 (1978) (listing synonyms of "relationship," including "relate to," "about," "concerning," and "in the matter of"); accord The American Heritage Dictionary of the English Language 4 (New College ed. 1982) (defining "about" as "[i]n reference to; relating to " (emphasis added) ).
The court asserts that there is no substantive difference between my proposed definition and the definition offered by 500, LLC . I disagree. By describing the plain meaning of "relating to" as "about," which is defined as "with regard to," "concerning," or "on the subject of," the statute would retain a narrow focus. See Webster's Third New International Dictionary 5 (3d ed. 2002). By contrast, the court today holds that "relating to" means "[to] pertain, refer, or stand in some relation to." Supra at pg. 8. "Standing in some relation to" or "referring to" a statutory topic is expansive, and requires a lesser degree of logical relation to that topic than being "about" that topic.
For example, Minn. Stat. § 290.0131 (2016) details what amounts individuals, estates, and trusts must add to their federal taxable income when calculating the income taxes they owe the State. Subdivision 3 of section 290.0131 mentions the amount of motor vehicle sales taxes paid in the taxable year. Section 290.0131 thus both refers and stands in some relation to motor vehicle sales. But section 290.0131 is undoubtedly about taxes, and also stands in some relation and refers to taxes. Put more generally, a statute that is about taxation will both stand in relation to and refer to taxation, but a statute that stands in relation or refers to taxation may not necessarily be about taxation. I therefore respectfully disagree with the court's contention that "about" is merely a consistent synonym for the terms it has used to give meaning to the tax bar.
My interpretation is also more consistent with the plain meaning of the word "relate," which means "to establish a logical or causal connection" between two things. Webster's Third New International Dictionary 1916 (3d ed. 2002). My definition is a reasonable one, though it is narrower than the court's. I therefore conclude *327 that the tax-bar clause in Minn. Stat. § 15C.03 is ambiguous.
II.
Because the MFCA's tax bar is ambiguous, our duty is "to determine what meaning the Legislature intended to ascribe" to the phrase "portions of Minnesota Statutes relating to taxation." Nordling v. Ford Motor Co. , 231 Minn. 68, 42 N.W.2d 576, 582 (1950). In determining the meaning of the statute, we may consider prior versions of the law, the law's object or purpose, and other laws on the same subject. Minn. Stat. § 645.16(4) - (5) (2016). All three considerations support a narrow interpretation of the MFCA tax bar.
The MFCA prohibits "knowingly mak[ing] or us[ing] ... a false record or statement material to an obligation to pay or transmit money or property to the state" or "knowingly conceal[ing] or knowingly and improperly avoid[ing] or decreas[ing] an obligation to pay or transmit money to the state." Minn. Stat. § 15C.02(a)(7) (2016). "Obligation" is statutorily defined as "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment." Minn. Stat. § 15C.01, subd. 3b. This definition was added in 2013, see Act of Apr. 22, 2013, ch. 16, § 1, 2013 Minn. Laws 95, 96, four years after the tax bar was enacted in 2009, see Act of May 16, 2009, ch. 101, art. 2, § 26, 2009 Minn. Laws 1654, 1678. The Legislature, aware of the tax bar, amended the MFCA by adopting a broad definition of the "obligation" to pay or transmit "money" to the state, thus ensuring that false statements or records related to fees were still actionable under the statute, which in turn demonstrates its intent that the tax bar be read narrowly.
Additionally, the purpose behind the federal FCA's tax bar supports my limited reading. We have previously considered persuasive federal case law when construing analogous state statutes. See, e.g. , LaMont v. Indep. Sch. Dist. No. 728 , 814 N.W.2d 14, 21 (Minn. 2012) (supporting Minnesota Human Rights Act interpretation with federal case law regarding similar provisions of Title VII); Anderson v. Comm'r of Taxation , 253 Minn. 528, 93 N.W.2d 523, 532-33 (1958) (deeming federal tax law cases persuasive if we have no decisions to the contrary and the federal and state statutes are substantially similar). In the FCA, the tax bar is limited to "claims, records, or statements made under the Internal Revenue Code of 1986." 31 U.S.C. § 3729(d) (2012). The purpose of the FCA tax bar is "to prevent private litigants from interfering with the IRS's efforts to enforce the tax laws." United States ex rel. Lissack v. Sakura Global Capital Mkts., Inc. , 377 F.3d 145, 156 (2d. Cir. 2004).
Because the MFCA was modeled on the FCA, we can reasonably presume that the Legislature similarly intended to prevent private litigants from interfering with the Department of Revenue's effort to enforce the State's tax laws as well. See Minn. Stat. § 270C.03, subd. 1(1) (2016) (granting the Commissioner of Revenue the power to "administer and enforce the assessment and collection of taxes"). Therefore, I read "portions of Minnesota Statutes relating to taxation" to mean the statutes that make up Minnesota's counterpart to the Internal Revenue Code.
Minnesota's counterpart to the Internal Revenue Code is best described by Minn. Stat. § 271.01, subd. 5 (2016), which grants the Tax Court the "sole, exclusive, and final authority for the hearing and determination *328 of all questions of law and fact arising under the tax laws of the state, as defined by [subdivision 5]." Subdivision 5 defines "the tax laws of this state" as including "[l]aws governing taxes, aids, and related matters administered by the commissioner of revenue, laws dealing with property valuation, assessment or taxation of property for property tax purposes, and any other laws that contain provisions authorizing review of taxes, aids, and related matters by the Tax Court." Id. Cf. Minn. Stat. § 270C.01, subd. 10 (2016) (defining a "tax" as a "tax or fee imposed by a law administered by the commissioner [of revenue]"). The statutes at issue in this case do not meet this definition.
None of the fees that Phone Recovery Services claims respondents underreported are collected by, paid to, or administered by the Commissioner of Revenue; rather, they are paid to the Commissioner of Public Safety, as required by Minn. Stat. § 237.49 (2016). None of the fees relate to property taxes. See Minn. Stat. §§ 237.52, .70, 403.11 (2016). And none of the statutes creating these fees contain provisions that authorize review by the Tax Court. See id. The statutes at issue in this case are clearly not part of "the tax laws of this state," see Minn. Stat. § 271.01, subd. 5, and are therefore not analogous to the Internal Revenue Code.
Moreover, the FCA is a remedial statute. See, e.g. , Hudson v. United States , 522 U.S. 93, 100, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (detailing remedies provided by the FCA). It thus logically follows that the MFCA is also remedial. See Hartwig v. Loyal Order of Moose, Brainerd Lodge No. 1246 , 253 Minn. 347, 91 N.W.2d 794, 803 (1958) (characterizing the Civil Damage Act as remedial because it provided a remedy of compensation for damages); cf. Statute , Black's Law Dictionary (10th ed. 2014) (defining a remedial statute as "a law providing a means to enforce rights or redress injuries"). Remedial statutes are to be construed liberally. S .M. Hentges & Sons, Inc. v. Mensing , 777 N.W.2d 228, 232 (Minn. 2010). Exceptions to remedial statutes, conversely, are construed narrowly. Current Tech. Concepts, Inc. v. Irie Enters., Inc. , 530 N.W.2d 539, 544 (Minn. 1995) (citation omitted).
Construing "relating to" to mean "about" instead of "having a connection with" narrows the application of the tax bar, which better reflects the intent of the Legislature. I would therefore resolve the tax bar's ambiguity in favor of my proposed interpretation.
III.
Having concluded that "portions of Minnesota Statutes relating to taxation" means "portions of Minnesota Statutes that are about taxation," I next consider whether the statutes at issue in this case are about taxation.
The phrase "statutes relating to taxation" is not defined in our jurisprudence, and we have used this precise phrase only three times. See State v. Nw. Airlines , 213 Minn. 395, 7 N.W.2d 691, 699 (1942) (referencing "[t]he provisions of the statutes relating to taxation of personal property"); State v. New England Furniture & Carpet Co. , 107 Minn. 52, 119 N.W. 427, 427-28 (1909) (referencing, but not defining, "the statutes relating to taxation"); see also State v. Nw. States Portland Cement Co. , 258 Minn. 162, 103 N.W.2d 225, 227 (1960) (same). Language similar to "statutes relating to taxation" also appears in the text of two statutes, but neither defines the term, neither has been interpreted, and both refer to the taxation of specific items. See Minn. Stat. §§ 347.21 (referring to "all laws relating to taxation of dogs"), 469.164, subd. 2 (referring to "laws and regulations *329 relating to taxation and valuation of telephone company property") (2016).
To resolve whether or not a statute is "about" taxation, we should look to the preamble of the session law creating that statute. See Berg v. Berg , 201 Minn. 179, 275 N.W. 836, 842 (1937) (noting that statutory preambles "ordinarily declare[ ] the mischief which it is the intention of the Legislature to correct" (citation omitted) (internal quotation marks omitted) ). The Legislature has used the phrase "relating to taxation" many times in the preambles of bills that enact or amend tax statutes. See, e.g. , Act of Mar. 9, 2010, ch. 187, 2010 Minn. Laws 34, 34 ("An act relating to taxation....); Act of Apr. 6, 2009, ch. 14, 2009 Minn. Laws 38, 38 (same); Act of Jan. 30, 2007, ch. 1, 2007 Minn. Laws 3, 3 (same). The phrase "relating to taxation," therefore, has a special meaning for the Legislature: it denotes that the law is about taxation.
In the case before us today, not one of the session laws that initially created the statutes at issue was about taxation or concerned taxation. Minnesota Statutes § 403.11 was part of "[a]n act relating to public safety; telephone companies; providing for local emergency telephone service; appropriating money." Act of May 27, 1977, ch. 311, § 11, 1977 Minn. Laws 627, 631. Minnesota Statutes § 237.52 was part of "[a]n act relating to utilities; establishing program to provide communication-impaired people with devices enabling their use of telephones; creating advisory committee and requiring report; providing for payment of costs of program." Act of May 28, 1987, ch. 308, § 3, 1987 Minn. Laws 1840, 1843-44. And Minnesota Statutes § 237.70 was part of "[a]n act relating to public utilities; providing for the reduced regulation of certain competitive telephone services, with limitations and procedures; requiring persons providing private shared tenant service to grant certain access; requiring a study and report on universal service assistance; providing for a telephone assistance plan ..." Act of June 1, 1987, ch. 340, § 14, 1987 Minn. Laws 2157, 2169-71. These statutes were not enacted as part of acts relating to taxation. None of these statutes is about taxation, nor do the statutes have a substantial relationship to taxation; indeed, the Legislature did not mention taxation in the text of these statutes. I cannot, therefore, agree with the majority that these constitute "statutes relating to taxation."
The court rejects my analysis, arguing that we can only look to preambles when a statute is ambiguous, and that we cannot use the preambles of session laws that created other statutes to resolve the ambiguity in Minn. Stat. § 15C.03. Both contentions misapprehend my point. First, as discussed, Minn. Stat. § 15C.03 is facially ambiguous. Second, when a statute is ambiguous, we may consider other laws "upon the same or similar subjects." Minn. Stat. § 645.16(5). This canon, necessarily, requires us to first determine the subjects of those other laws, to see whether or not they are "the same or similar." My analysis logically uses the preambles of the legislative acts enacting Minn. Stat. §§ 237.52, .70, and 403.11 to evaluate whether those statutes concern the "same or similar subject" as Minn. Stat. § 15C.03, namely, taxation.
The holding I propose has two components: (1) Minn. Stat. § 15C.03 is facially ambiguous, and (2) this ambiguity should be resolved in favor of the narrower definition, "about." Under the court's holding, any statute that makes even a passing reference to a "tax" or functions like a tax, as defined by Minn. Stat. § 645.44, subd. 19, cannot form the basis of an MFCA qui tam action. Because the Legislature did not intend to bar MFCA claims as broadly *330 as the court bars them today, I would reverse the district court and remand this case for further proceedings.
The court cites Haghighi v. Russian-American Broadcasting Co. , 577 N.W.2d 927, 930 (Minn. 1998), for the proposition that, if it has erred today, the Legislature can amend the MFCA to correct this error. But that proposition cuts both ways. If the court adopted a narrow construction of the tax bar, as I propose, and the Legislature had actually intended a broad construction, then it would be just as easy for the Legislature to amend the MFCA to correct that hypothetical error. The court's holding today does not fulfill our duty to give effect to the intent of the Legislature, and I therefore respectfully dissent.
IV.
In their motion to dismiss and arguments on appeal, respondents present two alternate theories for dismissal: the MFCA's public-disclosure bar, and the requirement to plead fraud with particularity under Minn. R. Civ. P. 9.02. Because these arguments were preserved and fully briefed, I would reach and reject them.
A.
The MFCA's public-disclosure bar requires the dismissal of complaints "if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed ... by the news media." Minn. Stat. § 15C.05(f)(3) (2016). We have not previously interpreted this provision, which is nearly identical to the FCA's public-disclosure bar. Compare Minn. Stat. § 15C.05(f), with 31 U.S.C. § 3730(e)(4)(A) (2012). See also U.S. ex rel. Colquitt v. Abbott Labs. , 864 F.Supp.2d 499, 537 (N.D. Tex. 2012) (stating that the MFCA's public-disclosure bar is "substantively identical" to the FCA's). Again, I would look to federal case law interpreting the FCA for guidance in interpreting the MFCA. See, e.g. , LaMont , 814 N.W.2d at 21 ; Anderson , 93 N.W.2d at 532-33.
Like the MFCA, the FCA bars actions where "substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed ... from the news media." 31 U.S.C. § 3730(e)(4)(A)(iii). The Eighth Circuit recently held that the federal public-disclosure bar is only triggered if the defendant is specifically named or if the public disclosures "provide enough information about the participants in the scheme such that the defendant is identifiable." United States v. CSL Behring, L.L.C. , 855 F.3d 935, 944 (8th Cir. 2017) (citation omitted) (emphasis omitted). I would hold that this test is the correct construction of Minnesota's public-disclosure bar.
Here, respondents rely on various news articles, spanning from 2005 to 2012 that assert other telecommunications providers around the country engaged in similar schemes. The articles are from Tennessee, Missouri, Alabama, Indiana, and West Virginia. Every article deals exclusively with local 911 fees, and makes no mention of TAM or TAP fees, or analogous fees assessed by any other states. Of all the articles, only respondent AT&T is named, in a single 2012 article from Tennessee. This single reference to one respondent out of the dozens of telephone companies Phone Recovery Services has named in this lawsuit does not satisfy CSL Behring 's requirement that the public disclosures "must set the government squarely on the trail of a specific and identifiable defendant's participation in the fraud." 855 F.3d at 944 (citation omitted) (internal quotation marks omitted). Interpreting the MFCA consistently with federal case law that has interpreted virtually identical language in a statute with virtually the same purpose as the MFCA, I therefore conclude *331 that the MFCA's public-disclosure bar has no application to these facts.
B.
The Minnesota Rules of Civil Procedure require that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Minn. R. Civ. P. 9.02. Pleading "with particularity" requires a plaintiff "to plead the ultimate facts or the facts constituting fraud." Hardin Cty. Sav. Bank v. Hous. & Redevelopment Auth. of City of Brainerd , 821 N.W.2d 184, 191 (Minn. 2012) (citations omitted) (internal quotation marks omitted). The "ultimate facts" of a fraud claim are the facts that underlie each element of the claim. Id. (citation omitted).
A fraud claim has five elements:
(1) a false representation by [the defendant] of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made without knowing whether it was true or false; (3) with the intention to induce [the plaintiff] to act in reliance thereon; (4) that the representation caused [the plaintiff] to act in reliance thereon; and (5) that [the plaintiff] suffered pecuniary damages as a result of the reliance.
Valspar Refinish, Inc. v. Gaylord's, Inc. , 764 N.W.2d 359, 368 (Minn. 2009). In its amended complaint, Phone Recovery Services alleged that: (1) respondents falsely represented to the State that they had remitted the appropriate amount of fees and had reported the correct number of access lines; (2) respondents "[u]pon information and belief ... knowingly, intentionally, deliberately, and/or recklessly undercharge[ed] customers" for the 911, TAM, and TAP fees, and thus remitted an improper amount of the fees to the State; (3) the Minnesota Department of Public Safety could not verify that respondents' fee remittance forms were accurate without conducting an audit of respondents' assigned telephone lines; (4) neither the State nor the Department of Public Safety conducted such an audit; and (5) as a result, the State was underpaid by over $44 million.
Although Phone Recovery Services did not specifically allege that respondents intended to induce the State to act in reliance on their fee remittance forms, it can be reasonably inferred from the complaint that respondents intended to under-collect and underpay the 911, TAM, and TAP fees and to have the State rely on their artificially reduced number of reported telephone lines. And, as the non-moving party, Phone Recovery Services is entitled to all reasonable inferences in its favor. Radke v. County of Freeborn , 694 N.W.2d 788, 793 (Minn. 2005). Because Phone Recovery Services is entitled to reasonable inferences in its favor, may generally aver intent, and specifically pled all other elements of a fraud claim, I conclude that Phone Recovery Services' amended complaint satisfied Minn. R. Civ. P. 9.02.
V.
For the foregoing reasons, I respectfully dissent.
I join in the dissent of Justice McKeig.

As the court notes, neither party has argued that the tax bar is ambiguous. But when both parties advance reasonable but conflicting interpretations of a statute, as they have here, that statute must necessarily contain some ambiguity. See, e.g. , Zurich Am. Ins. Co. v. Bjelland , 710 N.W.2d 64, 68 (Minn. 2006) (noting that both parties asserted the statute was unambiguous but both advanced differing yet "plausible" interpretations of that language). Thus, we are not bound by the parties' assertions that a statute is unambiguous, particularly when both parties claim differing but allegedly unambiguous interpretations.